The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore,* 163 Ohio App.3d 23, 2005-Ohio-4531.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20465.

Decided Aug. 26, 2005.

26

Mathias H. Heck Jr., Hamilton County Prosecuting Attorney, and Nolan Thomas, Assistant Prosecuting Attorney, for appellee.

Michael Wright, for appellant.

_____

Fain, Judge.

{¶ 1} Defendant-appellant, Byron Moore, appeals from his conviction and sentence for domestic violence. Moore contends that he was denied a fair trial due to prosecutorial misconduct and the ineffective assistance of counsel. He further claims that the trial court erred in instructing the jury and in imposing an excessive sentence. Finally, Moore contends that the evidence does not support his conviction.

{¶ 2} We conclude that Moore has failed to establish that the prosecutor acted improperly or that trial counsel's actions rose to the level of ineffective assistance. We further conclude that the trial court did not commit prejudicial error in instructing the jury and that the trial court did not err in sentencing. We also find that the record contains evidence sufficient to support Moore's conviction.

{¶ 3} Accordingly, the judgment of the trial court is affirmed.

I

{¶ 4} In September 2003, Moore hit the victim, his stepson, with a belt. The child suffered bruising to various parts of his body. The child also suffered an injury to his chest, which bled and later scarred. Moore was subsequently charged with domestic violence. The facts relevant to this appeal are adduced from the transcript of the trial.

{¶ 5} According to Moore, he hit his stepson repeatedly with his belt in order to discipline him for failing to perform his assigned household chores. Moore testified that he did not act excessively. Instead, he testified that he was exercising reasonable parental control. Moore contends that he was attempting to spank the child on his rear, but that the child's attempts to evade the belt resulted in blows landing on other parts of his body. Moore also testified that he accidentally grabbed the child by the shirt, which caused the shirt to rip and left scratches on the child's chest. Moore denied injuring the child. He also testified that the child had behavioral problems that required discipline. Moore maintains that he had previously attempted to discipline the child by using nonphysical punishments—taking away privileges, for example.

{¶ 6} The child testified that he was in bed when Moore began "whipping" him with a belt. The child further testified that he jumped out of bed and ran into the corner of the room to get away from Moore but that Moore kept hitting him. He testified that during the beating, his shirt was ripped. He also testified that he suffered scratches, bruises, and bleeding.

{¶ 7} The child's sister testified that she heard her brother screaming and went to his bedroom, where she observed Moore holding a belt. She testified that she observed her brother in the corner and that he had bruises and a ripped shirt. She testified that she grabbed her baby brother from his crib and took him out of the room. She testified that Moore then continued to hit her brother and that the entire incident lasted about five minutes.

{¶ 8} Michelle Moore testified that she was married to Moore and that her son is Moore's stepson. She testified that she was at work when the incident occurred. She testified that when she returned home, she observed bruises on the child. Michelle testified that she took her son to the hospital and that the authorities were notified of the incident. Michelle further testified that her son suffered from bruising that lasted almost two weeks and that the incident left his chest scarred.

{¶ 9} Moore's mother, Shirley Moore, was sleeping at Moore's house at the time of the incident. She testified that she heard a "commotion," but no screaming. She testified that she did not observe any rip in the child's shirt or any blood, but she did see "several scratch marks" and red belt marks.

{¶ 10} The police officer investigating the incident testified that he observed bruising on the child's arms, chest, back, and lower legs. He also testified that the bruises were black, blue, and reddish. Another officer who interviewed the child testified that Moore had a previous conviction for domestic violence.

{¶ 11} Following trial, the jury convicted Moore of domestic violence. Moore was sentenced to 12 months in prison, the maximum prison term allowable for domestic violence under R.C. 2929.14. From his conviction and sentence, Moore appeals.

II

{¶ 12} Moore's first assignment of error states as follows:

{¶ 13} "The trial court erred in imposing a sentence that was excessive and contrary to law."

{¶ 14} Moore contends that the trial court erred by imposing the maximum possible sentence.

{¶ 15} Moore was convicted of domestic violence in violation of 2919.25(A), a felony of the fifth degree, which carries a possible prison term of six to 12 months. R.C. 2929.14(A)(5). When sentencing, the trial court is to impose the shortest prison term allowable for a felony unless the defendant has previously served time in prison or "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately

protect the public from future crime by the offender or others." R.C. 2929.14(B)(2). The court may impose the maximum prison term only if the defendant has committed the worst form of the offense or if the defender poses the greatest likelihood of committing future crimes. R.C. 2929.14(C). When determining whether to impose maximum or nonminimum sentences, the trial court must consider the nonexclusive list of seriousness and recidivism factors in R.C. 2929.12.

{¶ 16} In this case, the trial court found that the shortest prison term would demean the seriousness of Moore's conduct and that Moore had committed the worst form of the offense. Specifically, the trial court found that Moore's actions "terrorized" the victim, who testified that he thought that Moore was going to kill him. The trial court also noted that the child had to go to a hospital for treatment of his injuries.

{¶ 17} The trial court credited the information provided by the probation officer who completed the presentence investigation ("PSI") review. That review indicated that at the time the PSI was completed, Moore denied responsibility for the offense and stated that the child was the "problem." Further, the PSI review indicated that Moore threatened the victim with more whippings if he should inform his mother about the offense. The PSI also indicated that Moore had a propensity for violence, given his prior conviction for domestic violence. The trial court also noted that this incident was Moore's second conviction for domestic violence. The first conviction involved an adult. The trial court stated that Moore's progression from injuring adults to injuring children indicates that "[t]here is clearly an acceleration" in Moore's behavior and that the behavior showed that Moore has the greatest likelihood of committing future offenses.

{¶ 18} In order to vacate or modify a felony sentence, a reviewing court must clearly and convincingly find either that the record does not support the sentencing court's findings or that the sentence is contrary to the law. R.C. 2953.08(G)(2). We find that the record clearly and convincingly supports the trial court's findings with regard to sentencing. We further find that the trial court's decision regarding the sentence is in accord with the law and is not excessive. Therefore, the first assignment of error is overruled.

### III

{¶ 19} The second assignment of error is as follows:

{¶ 20} "Appellant was deprived of a fair trial through prosecutorial misconduct."

{¶ 21} Harris contends that his trial was tainted by the prosecutor. Specifically, Harris claims that the prosecutor acted improperly by (1) asking leading

questions of the state's witnesses, (2) referring to the incident as a "beating," (3) appealing to the jurors' emotions during closing argument, and (4) presenting information that Harris had fathered seven children by five different women.

{¶ 22} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones* (2000), 90 Ohio St.3d 403, 420, 739 N.E.2d 300. Citation omitted. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144. When it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed. See *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082.

{¶ 23} We begin with the claim that the prosecutor improperly led his own witnesses during direct examination. Specifically, he contends that the prosecutor asked leading questions of the victim, as well as of the victim's mother and sister. He does not cite any specific testimony; rather, he refers to specific pages of the transcript.

{¶ 24} We have reviewed the testimony of these witnesses in its entirety and begin by noting that no objection was raised to any of the instances cited by Moore. Additionally, we cannot find evidence of leading with regard to some of the cited transcript pages. We further note that our review of the testimony indicates that any leading done by the prosecutor was not improper.

{¶ 25} Some of the instances involved the prosecutor's attempt to emphasize parts of the witnesses' prior testimony or the prosecutor's restating information that had already been provided. For example, the prosecutor asked the victim's 11–year–old sister whether she had heard Moore state that he was "not done yet" when she entered the victim's bedroom. This question merely reiterated the sister's earlier testimony.

{¶ 26} The remaining instances involved the prosecutor's attempt to get introductory or preliminary information, such as names, ages, and addresses, into the record. For example, the prosecutor asked the nine-year-old victim whether he was "still living on Shadyside Drive" at the time of the offense.

{¶ 27} Moore has failed to show that he was denied a fair trial because of any of the leading questions asked by the prosecutor. Leading questions, even if theoretically subject to objection, are frequently not objected to because they serve to expedite the proceedings without prejudicing the interests of a party.

{¶ 28} Moore also claims that the prosecutor improperly referred to the incident as a "beating." Specifically, he cites the following two questions asked by the prosecutor during his cross-examination of Moore:

{¶ 29} "Q: Sir, he never talked back to you, did he, when you were beating him; did he?

{¶ 30} "MR. WRIGHT: Objection to the characterization of beating.

{¶ 31} "THE COURT: Sustained, as to the form.

{¶ 32} " * * *

{¶ 33} "Q: Okay. By the way, were you beating him with the—excuse me—hitting him with the buckle part of the belt or the leather strip part?"

{¶ 34} These are the only two instances, out of over 200 pages of transcript, cited by Moore. And it appears that the second instance was a mistake that the prosecutor corrected. We have not found any evidence to indicate that the prosecutor deliberately defied the judge's ruling regarding the use of the term. Moreover, while it may have been unwise for the prosecutor to use the term "beating," given the evidence regarding the incident, we are not prepared to hold that it constituted an unfair characterization of what Moore did to his stepson. Nor can we say that these two instances were so prejudicial to Moore as to deny him a fair trial.

{¶ 35} We next address the claim that the prosecutor improperly appealed to the jurors' emotions during closing argument. Again, Moore does not set forth the specific language to which he objects but merely refers us to nine pages of the transcript.

{¶ 36} "Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. In closing argument, a prosecutor may comment freely on 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' 'Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced.'" *State v. Howard,* Montgomery App. No. 20575, 2005-Ohio-3702, 2005 WL 1705202, ¶ 37, quoting *State v. Carr–Poindexter,* Montgomery App. No. 20197, 2005-Ohio-1571, 2005 WL 737371, ¶ 63.

{¶ 37} Our review of the entire closing argument does not support Moore's claim that the prosecutor appealed to the sympathy or emotions of the jurors.

{¶ 38} Finally, we turn to the claim that the prosecutor improperly elicited information regarding the parentage of Moore's children. Moore refers us to the following colloquy between the prosecutor and the victim's mother:

{¶ 39} "Q: And does the defendant have any other children besides the two children that you have with him?

{¶ 40} "A: Yes.

{¶ 41} "Q: How many children does he have?

{¶ 42} "A: Other than [the two he had with me], five that I know of.

{¶ 43} "Q: And who's the mother of those kids?

{¶ 44} "A. Oh, uhm, Monica Leek. Bran—Stacy William. Belinda, I'm not sure of the last name, and myself, and Eva Jackson.

{¶ 45} "Q: Is that five, five mothers?

{¶ 46} "A: Yes. ·

{¶ 47} "MR. WRIGHT: Objection, your Honor. Relevance.

{¶ 48} "THE COURT: Sustained."

{¶ 49} From our review of the entire portion of this witness's testimony, it appears that the prosecutor was attempting to elicit background information about Moore. When the prosecutor asked whether there were five mothers, it appears to have been to merely clarify the witness's testimony. Moreover, Moore has failed to demonstrate how this line of questioning prejudiced him.

{¶ 50} We conclude that the record does not support Moore's claim of prosecutorial misconduct. Accordingly, the second assignment of error is overruled.

IV

{¶ 51} The third assignment of error states as follows:

{¶ 52} "The trial court erred in failing to provide requested lesser included offenses."

{¶ 53} Moore contends that the trial court erred by denying his request to instruct the jury on the offenses of negligent assault and assault.

{¶ 54} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus.

{¶ 55} "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279. The domestic-violence

statute, R.C. 2919.25, provides: "(A) [n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 56} Assault is proscribed by R.C. 2903.13 which states:

{¶ 57} "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.

{¶ 58} "(B) No person shall recklessly cause serious physical harm to another * * *."

{¶ 59} R.C. 2903.14, the negligent-assault statute, provides:

{¶ 60} "(A) No person shall negligently, by means of a deadly weapon * * * as defined in section 2923.11 of the Revised Code, cause physical harm to another * * *."

{¶ 61} A deadly weapon is defined as "any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 62} Clearly, the first prong of *Deem,* 40 Ohio St.3d 205, 533 N.E.2d 294, is met with regard to all three assault offenses, as all of them are misdemeanors, while the domestic-violence offense is a felony. Likewise, the third prong is also met because domestic violence requires proof that the harm was caused to a family or household member, while the assault offenses do not.

{¶ 63} We next address the second prong of *Deem:* whether domestic violence can ever be committed without committing one of the lesser offenses. Obviously, one can commit domestic violence without committing negligent assault. In order to commit negligent assault, a defendant must use a deadly weapon. Clearly, a defendant can commit domestic violence without using a deadly weapon.

{¶ 64} At first blush, it would appear that one cannot commit domestic violence without also committing an assault. However, we need not address this issue. Jury instructions regarding a lesser included offense should be given when sufficient evidence is presented to allow a jury to reasonably reject the greater offense and find the defendant guilty of the lesser included offense. *State v. Shane* (1992), 63 Ohio St.3d 630, 632–633, 590 N.E.2d 272. In other words, the trial court must instruct the jury on the lesser included offense if it is possible "under any reasonable view of the evidence for the jury to find the defendant not guilty of the greater offense and guilty of the lesser offense." *State v. Thrasher* (Jan. 21, 1994), Clark App. Nos. 2996 and 2997, 1994 WL 12425. Citation omitted.

{¶ 65} In this case, there is no reasonable view of the evidence that would permit the jury to acquit Moore of domestic violence while convicting him of

assault. There is no question that the victim was a family and household member of Moore's at the time of the offense. Moore did not, and does not now, contend that the victim was not a member of his family. Therefore, in order to acquit Moore of domestic violence, the jury would be required to ignore the undisputed evidence establishing that his victim was a family or household member.

{¶ 66} Thus, we conclude that the trial court did not abuse its discretion by denying the requested instructions regarding the lesser included assault offenses. Accordingly, the third assignment of error is overruled.

V

{¶ 67} The fourth and fifth assignments of error state:

{¶ 68} "Appellant was denied a fair trial through the trial court's provision of an incorrect and incomplete jury instruction.

{¶ 69} "The trial court failed in its duty to properly instruct the jury, thereby denying appellant a fair trial."

{¶ 70} Moore contends that he was denied a fair trial because the court improperly instructed the jury on the definition of "physical harm" and on the meaning of proper and reasonable parental control.

{¶ 71} As noted by Moore, trial counsel failed to interpose an objection regarding these issues; therefore, our review is limited to determining whether any error rises to the level of plain error. In order to find plain error, we must find that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Ballew* (1996), 76 Ohio St.3d 244, 251, 667 N.E.2d 369.

{¶ 72} We begin with Moore's claim that the trial court misdefined the phrase "physical harm." "Physical harm to persons" is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment regardless of its gravity or duration."

{¶ 73} The trial court, in its instructions, both given orally and submitted to the jury in writing, substituted the word "psychological" for "physiological." Moore contends that this constitutes plain error.

{¶ 74} We conclude that the trial court's misstatement was error. However, we cannot say that it rises to the level of plain error. Any reference to psychological harm to the child was minimal and was limited to a discussion of the child's mental state at the time of the incident. The state did not present any medical evidence to support a claim of psychological injury.

{¶ 75} Furthermore, the jury's decision did not need to rest on a finding of psychological injury to the victim. It is obvious from the evidence in the case

that Moore caused bodily injury to the victim. There is more than sufficient evidence to show that the victim was bruised and bleeding and that, at the time of trial, he still had a scar. In other words, given that the record is replete with evidence regarding actual bodily injury, we cannot say that the insertion of an incorrect word in the jury instructions caused the jury to convict Moore based upon a finding of psychological injury instead of upon a finding of physiological injury.

{¶ 76} Moore also contends that the trial court erred with regard to the jury instructions because the instructions permitted the jury to convict him of domestic violence upon a finding that he caused any physical harm, including minimal harm. Thus, he contends that the instructions did not allow for the use of corporal punishment as a form of proper and reasonable parental control.

{¶ 77} The trial court instructed the jury, as follows:

{¶ 78} "The Defendant is charged with one count of domestic violence. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that Byron Moore * * * did knowingly cause or attempt to cause physical harm to a family or household member, said Defendant having previously pleaded guilty to or been convicted of Domestic Violence * * *.

{¶ 79} " * * *

{¶ 80} "The Defendant claims that he was engaged in reasonable and proper parental discipline of his step-child. The law permits a parent to use reasonable and proper measures to discipline his child. If you find by a preponderance of the evidence that at the time in question the Defendant was engaged in reasonable and proper parental discipline of his child under the age of eighteen, then you must find the Defendant not guilty of domestic violence.

{¶ 81} "Some additional terms need to be defined at this point.

{¶ 82} " 'Reasonable' means not extreme or excessive under the circumstances.

{¶ 83} " 'Proper' means suitable or appropriate under the circumstances.

{¶ 84} "The Defendant is asserting an affirmative defense known as reasonable and proper parental discipline.

{¶ 85} "The burden of going forward with the evidence of reasonable and proper parental discipline and the burden of proving an affirmative defense are upon the Defendant. He must establish such a defense by a preponderance of the evidence."

{¶ 86} We find that Moore's claim lacks merit. These instructions are in accord with those set out in the Ohio Jury Instructions and therefore, it was not error, let alone plain error, for the trial court to use them. See *State v. Hicks* (1993), 88 Ohio App.3d 515, 520, 624 N.E.2d 332.

{¶ 87} Therefore, we conclude that Moore's claim of improper jury instructions must fail. The fourth and fifth assignments of error are overruled.

## VI

{¶ 88} For his sixth assignment of error, Moore states:

{¶ 89} "Appellant was deprived of his constitutional right to effective assistance of counsel."

{¶ 90} Moore contends that counsel was ineffective for failing to preserve his claim of error with regard to the jury instructions discussed in Part V above.

{¶ 91} We evaluate claims of ineffective assistance of counsel under the two-part test provided in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." *State v. Stevens*, Montgomery App. No. 19572, 2003-Ohio-6249, 2003 WL 22764527, at ¶ 33.

{¶ 92} As noted above, we conclude that the trial court erred by substituting the term "psychological" in its definition of "physical harm." Thus, we conclude that it was error for trial counsel to fail to object to this mistake. However, as also noted above, we cannot say that there is any reasonable likelihood that the outcome of the trial would have been different had the correct word been used. Therefore, we cannot say that Moore has established the second prong of his claim of ineffective assistance of counsel with regard to this issue.

{¶ 93} Additionally, we find no error with regard to the instructions on reasonable and proper parental control. Therefore, we cannot say that counsel was ineffective with regard to this instruction.

{¶ 94} The sixth assignment of error is overruled.

## VII

{¶ 95} Moore's seventh assignment of error is as follows:

{¶ 96} "The weight of the evidence militates in favor of a finding of reasonable parental discipline."

{¶ 97} Moore contends that the jury erred in finding him guilty of domestic violence. In support, he claims that the evidence demonstrates that he was engaged in reasonable and proper parental discipline at the time he whipped the victim and that proper discipline constitutes an affirmative defense pursuant to *State v. Hicks* (1993) 88 Ohio App.3d 515, 624 N.E.2d 332.

{¶ 98} The jury, as the finder of fact, has the opportunity to see and hear the witnesses presented by the parties. Thus, the jury as factfinder is best suited to determine whether to credit the testimony of a particular witness. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. When reviewing a judgment under a manifest-weight standard of review, "[t]he appellate court ' "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *State v. Gray*, Lucas App. No. L–04–1126, 2005-Ohio-3861, 2005 WL 1793722, ¶ 23, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 99} In this case, Moore notes that the victim acknowledged that he did not like Moore and that he had been in trouble for behavioral problems in the past. Moore testified that he had tried to discipline the victim by using nonphysical means such as "taking away privileges and giving him a time out." Moore presented evidence that this incident arose because the victim failed to clean the kitchen despite being instructed to do so. Moore testified that because of the disobedience, he spanked the victim "across the rear with a belt approximately five or six times." Moore's evidence indicates that, as he was attempting to spank the victim, he accidentally grabbed the victim's shirt and this accident caused the shirt to rip and resulted in scratches to the victim's chest. Moore's testimony indicates that other parts of the victim's body were hit only because the victim was attempting to evade the spanking and was moving in such a way as to cause the strikes to hit areas other than his buttocks. Finally, Moore testified that he did not believe that his actions were excessive, and he noted that the evidence shows that the harm to the victim was not life threatening.

{¶ 100} The state presented evidence that the victim, Moore's nine-year-old stepson, was awakened in the early morning when Moore began whipping him with a belt. There is evidence to demonstrate that Moore was cursing and that his tone of voice was loud and angry at the time he was hitting the victim. The evidence showed that the victim was struck on his arms, back, stomach, and legs. The victim fled from his bed to the corner of his bedroom, but Moore continued to strike him with the belt. The victim was screaming when his sister entered the bedroom. Moore continued to strike the victim after the sister left the bedroom. The evidence further shows that the victim's shirt was torn and that he was bleeding on his chest. The victim had visible injuries on his body that were observed by an officer investigating the incident. The victim went to the hospital for treatment. At the time of trial, the victim still had a scar on his chest.

{¶ 101} Given the evidence presented, we conclude that the jury could reasonably find that Moore's actions were unreasonable and improper. Therefore, we cannot say that the jury clearly lost its way in determining that Moore had committed the offense of domestic violence and that he failed to establish the affirmative defense of reasonable and proper parental discipline. Accordingly, the seventh assignment of error is overruled.

## VIII

{¶ 102} All of Moore's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY and DONOVAN, JJ., concur.