OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Appellant Terrence L. Wilson, filed February 11, 2005. Following a jury trial that commenced on January 10, 2005, Wilson was convicted of eleven counts of forcible rape of a child under 13 in violation of R.C. 2907.02(A)(1)(b) (counts 1-11), twelve counts of forcible rape in violation of R.C. 2907.02(A)(2) (counts 12-23), and one count of possession of crack cocaine in an amount equaling or exceeding one gram, but less than five grams, in violation of R.C. 2925.11(A) (count 24). On January 13, 2005, Wilson was sentenced to life imprisonment for the rapes charged in counts 1-11. He received a three year sentence for each of the rapes charged in counts 12-21, a ten year sentence for each of the rapes charged in counts 22 and 23, and a six month sentence for the possession of crack cocaine charged in count 24. Counts 22 and 23 are to be served consecutively to each other and consecutively with counts 1-21, and count 24 is to be served concurrently with counts 1-21 and consecutively to counts 22-23, for a total prison term of life plus twenty years. The Court also designated Wilson an aggravated sexually-oriented offender and a sexually-oriented offender.
 {¶ 2} The victim in this matter, P.M., is the daughter of Wilson's former girlfriend, Diedra. Wilson, Diedra and P.M. resided together from the time P.M. was a year old, and Wilson and Diedra had three sons together. P.M. called Wilson "Daddy." When P.M. was 11 or 12 years old, Wilson began entering her bedroom at night and touching her inappropriately, ultimately progressing to penetrating her vagina with his penis. The abuse continued until P.M. was 16. Wilson once took P.M. to the home of another girlfriend of his and raped her there, and on that day P.M. told her mother of the abuse. Diedra took P.M. to the police station.
 {¶ 3} Officers responded to P.M.'s residence in Dayton, and arrested Wilson. He initially seemed nervous and refused to remove his hand from the pocket of his sweatpants. Officers found a plastic baggie in his pocket that contained crack cocaine.
 {¶ 4} Another officer took P.M. to Children's Medical Center, where the attending physician, Dr. Russell Hackett, conducted a full physical exam, including a pelvic exam, during which he observed a small cut along the posterior vaginal wall. At trial he testified that he believed the presence of the cut was consistent with P.M.'s statement that Wilson and she had sexual intercourse. Nurse Wendy Swank assisted Dr. Hackett in completing a rape kit. At a follow-up examination, a second doctor observed a "defect in the hymen, * * * an interruption in the normal * * * continuity of the tissue * * * that extended all the way to the base * * * of the vaginal wall and where the hymen meets the vaginal wall." The injury appeared to have healed and was consistent with penetration of either a penis or fingers into the vaginal opening.
 {¶ 5} The Miami Valley Crime Lab tested the clothing that Wilson and P.M. wore on the last date they had intercourse, and both Wilson's shorts and P.M.'s underwear revealed a mixture of DNA from both Wilson and P.M. In a police interview with Detective Phillip Olinger, Wilson admitted inserting his fingers and penis into P.M.'s vagina. He stated that he did so to teach her about sex and to keep her from becoming promiscuous.
 {¶ 6} Wilson asserts eight assignments of error on appeal.
 {¶ 7} Wilson first assignment of error includes several arguments as follows:
 {¶ 8} "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT"
"A. The prosecutor engaged in misconduct by advancing improperarguments during the state's closing argument."
"1. Prosecutorial misconduct through substituting argumentsappealing to jurors' emotions in place of reasoned advocacy."
"2. Prosecutorial misconduct through misstatement of evidenceand argument based on information outside the record."
 {¶ 9} Wilson argues that the prosecutor's remark during opening statement that Wilson had a girlfriend in addition to Diedra, and that Diedra had been supporting Wilson for 15 years, was prejudicial. He also argues that the following remarks during closing arguments prejudiced him: (1) "It's your turn now to let Terrence Wilson know that what he did was wrong. To let him know that his arrogance went too far. You need to help [P.M.] put an end to this. You need to find — I'm asking you to find Terrence Wilson guilty of all 24 counts"; (2) "Kids who don't verbalize their anger or their sadness are more concerning that [sic] kids that do. At some point in time in [P.M.'s] life, it will surface. I don't know when and I don't know how. It didn't happen here. It could have, but it didn't. But I submit to you that at some point in time it will"; and (3) Wilson "would either take her underwear off or pull it down." Regarding the last statement, Wilson argues that the record reveals that P.M. in fact removed her own underwear, allegedly belying the element of force.
 {¶ 10} "In analyzing claims of prosecutorial misconduct, the test is `whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." Statev. Moore, Montgomery App. No. 20465, 2005-Ohio-4531 (internal citations omitted). "`The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id. "In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial." Id. If "it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed." Id.
 {¶ 11} "`Generally, prosecutors are entitled to considerable latitude in opening statement and closing argument. In closing argument, a prosecutor may comment freely on `what the evidence has shown and what reasonable inferences may be drawn therefrom.' `Moreover, because isolated instances of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced.'" Id.
 {¶ 12} "A failure to object to alleged prosecutorial misconduct waives all but plain error." State v. Bajaj,
Columbiana App. No. 03 CO 16, 2005-Ohio-2931. There is no plain error unless it is clear that, but for the error, the outcome of the trial would clearly have been different. State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 13} Wilson did not object to any of the prosecutor's comments in opening statement or closing argument that he now argues amount to misconduct, and he has accordingly waived all but plain error. We see no plain error. Considering the context of the entire trial, and given Wilson's admissions and the DNA evidence against Wilson, it is clear beyond a reasonable doubt that (1) the jury would have reached the same verdict had the prosecutor not informed them that Diedra supported Wilson; (2) the jury would have reached the same verdict had the prosecutor not asked them to convict Wilson to help P.M. put an end to the abuse, especially given the prosecutor's repeated referrals to testimony and evidence presented at trial establishing the elements of each offense; (3) the jury would have reached the same verdict had the prosecutor not suggested that P.M. would ultimately experience an emotional reaction to the abuse, albeit she had not done so as yet, especially since Dr. Hacket testified that while some children react to abuse emotionally, others remain detached; and (4) the jury would have reached the same verdict regarding the element of force had the prosecutor not told them that Wilson, instead of P.M., removed P.M.'s underwear, especially since the prosecutor did not rely on that fact when summarizing the evidence establishing force, focusing instead on P.M.'s fear of Wilson, the physical findings, the results of the DNA testing and Wilson's admissions.
"2. Prosecutorial misconduct through posing leadingquestions."
 {¶ 14} Wilson argues that the State elicited P.M.'s testimony by means of improper leading questions. The prosecutor asked P.M., after she testified whether she felt ashamed about the abuse, if her shame was "part of the reason why [she] didn't tell." He also asked her, after she testified that the violence occurring in her home was something she lived with, without calling the police, if "that was the same thing that happened with regard to the things [Wilson] was doing to you." The trial court overruled Wilson's objections to both questions.
 {¶ 15} Evid. R. 611(C) provides that leading questions "should not be used on the direct examination of a witness except as may be necessary to develop his testimony."
 {¶ 16} Even if these questions were improper, and we don't believe they were, considering the context of the entire trial, and given the overwhelming evidence of Wilson's guilt, it is clear beyond a reasonable doubt that the jury would have found Wilson guilty absent the above questions.
"3. Prosecutorial misconduct through repeatedly characterizing[P.M.] as the `victim.'"
 {¶ 17} Wilson argues that the prosecutor's repeated references to P.M. as "the victim" as opposed to "the alleged victim" had a "subtle, psychological effect on the jury." Wilson did not object to the State's characterization of its witness at trial, and all but plain error is accordingly waived. Wilson admitted to abusing P.M., and he acknowledged that what he did was wrong. Accordingly, the prosecutor's reference to P.M. as a victim did not so prejudice appellant's rights as to require a new trial.
"4. Misconduct through the prosecutions' eliciting of improperevidence."
 {¶ 18} Wilson challenges the testimony, to which he made no objection at trial, of Nurse Wendy Swank and Dr. Russell Hackett. The prosecutor asked Nurse Swank about the circumstances under which she treated P.M. in the emergency department, and the witness replied, "[s]he was sexually assaulted by her mother's boyfriend." The prosecutor asked Dr. Hackett about the history P.M. provided to him, and he stated that "she had had intercourse with her stepfather," and that the laceration he observed "most likely came from the sexual intercourse."
 {¶ 19} "[A]n expert witness in a child sexual abuse case may not testify as to the victim's veracity." State v. Muhleka
Montgomery App. No. CIV.A. 19827, 2004-Ohio-1822 (citing Statev. Boston (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220). "[A]fter examining a child, interviewing the child, and reviewing the child's medical history, an expert witness may testify as to whether there was sexual abuse." Id.
 {¶ 20} The statements above did not constitute the witnesses' personal opinion as to P.M.'s veracity, but instead represented findings based on the information in front of them after they examined and interviewed P.M. and reviewed her medical history. Certainly, Nurse Swank should not have opined who was the perpetrator, but this response standing alone does not warrant reversal. Even if we were to conclude that the statements attested to P.M.'s veracity, their absence would not have altered the jury's verdict, given the other, overwhelming evidence of guilt.
 {¶ 21} Having considered all of Wilson's assertions of wrongful prosecutorial conduct in the context of the entire trial, we conclude that the jury would have found Wilson guilty even absent the alleged misconduct. Accordingly, Wilson's first assignment of error is overruled.
"B. Appellant suffered prejudice through prosecutorialmisconduct."
 {¶ 22} Given our determinations above, Wilson suffered no prejudice due to the misconduct he alleges.
 {¶ 23} Wilson's second assignment of error is as follows:
 {¶ 24} "APPELLANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL THROUGH THE COURT'S FAULTY JURY CHARGE"
 {¶ 25} The trial court's jury charge as to Count 18 of the Indictment appears in the record as follows: "Before you can find the Defendant Guilty of Rape as charged in Count XVIII, you must find beyond a reasonable doubt that between the dates of November 23, 2000 and June 30th [sic], and in Montgomery County, Ohio, the Defendant engaged in sexual conduct with another, * * * and the Defendant purposefully compelled the other person, * * * to submit by force or threat of force."
 {¶ 26} A criminal defendant "is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." State v. Manley (1994),71 Ohio St.3d 342, 347, 643 N.E.2d 1107 (internal citations omitted). Wilson did not object to the jury instructions, and Crim.R. 30(A) provides that, "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Failure to timely object waives all but plain error. State v. Moore, Montgomery App. No. 20465,2005-Ohio-4531.
 {¶ 27} Our review of the record reveals that, while the trial court did not verbally instruct the jury that the offense charged in count 18 occurred between the dates of November 23, 2000 and June 30, 2004, the court provided the jury with written instructions which set forth the beginning and ending dates of the offense charged. Because the jury was instructed on all elements the State had to prove to establish the crime charged in count 18, and because there is no plain error, Wilson's second assignment of error is overruled.
 {¶ 28} Wilson's third assignment of error is as follows:
 {¶ 29} "APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL"
1. Ineffective assistance of counsel through failing to objectto the prosecutor's emotional and speculative arguments, as wellas the misstatement of evidence."
 {¶ 30} "`In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different.'" Moore (internal citations omitted).
 {¶ 31} Wilson identifies the same four comments made by the prosecutor during his opening statement and closing argument that Wilson identified in his first assignment of error. We have already determined that the jury's verdict would have been the same in the absence of the comments, and counsel's lack of objection to them does not fall below an objective standard of reasonableness.
"2. Ineffective assistance through failure to object to theprosecutions [sic] repeated characterizations of [P.M.] as the`victim.'"
 {¶ 32} We have already determined that the prosecutor's characterization of P.M. as a victim is not reversible error, thus counsel for Wilson cannot be found to be ineffective for failing to object to the characterization. Such a singular omission does not constitute conduct below an objective standard of reasonableness.
"3. Ineffective assistance through failure to object to theadmission of improper evidence."
 {¶ 33} Wilson herein repeats his arguments that Nurse Swank and Dr. Hackett improperly testified as to P.M.'s veracity. We have already determined that the testimony of these witnesses does not constitute reversible error and counsel's failure to object does not rise to the level of ineffective assistance.
 {¶ 34} Wilson herein also cites to counsel's failure to object to the testimony of Detective Olinger, who interviewed Wilson regarding his abuse of P.M. and stated that he did not feel that Wilson was remorseful.
 {¶ 35} Evid.R. 701 provides that testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Detective Olinger's answers should have been limited to his observation that Wilson did not acknowledge the wrongfulness of his abuse since Wilson rationalized his behavior as necessary to teach P.M. about sex and to prevent her from becoming promiscuous. However, what Detective Olinger "felt" regarding a lack of remorse was inadmissible. Counsel should have objected but this omission does not constitute ineffective assistance.
"4. Ineffective assistance of counsel through failure toobject to a faulty jury charge."
 {¶ 36} We have already concluded that the written jury instructions adequately advised the jury of each of the elements of the offense charged in count 18, and Wilson has not shown that he suffered any prejudice from his counsel's decision not to object to the court's verbal instructions.
"5. Ineffective assistance through failure to request aseverance."
 {¶ 37} Wilson argues that the sexually oriented offenses in counts 1-23 should have been severed from the drug offense in count 24 because they are too dissimilar to warrant their joinder.
 {¶ 38} "Under Crim.R. 8(A), `two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.' Joinder is favored where the offenses are `of the same or similar character.' (internal citations omitted) Furthermore, a defendant is not prejudiced by joinder where the joined offenses are `simple and direct, so that a jury is capable of segregating the proof required for each offense,' * * *." State v. Fletcher, Montgomery App. No. 2003-CA-62, 2004-Ohio-4517. "`Joinder and the avoidance of multiple trials [are] favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries.'" State v.Skatzes, Montgomery App. No. 15848, 2003-Ohio-516 (internal citations omitted). If evidence of each of the joined offenses would have been admissible at separate trials, severance is not required because prejudice due to the cumulation of evidence or the inference of criminal disposition is largely absent." Id. (Internal citations omitted).
 {¶ 39} The offenses herein were connected together; P.M.'s accusations regarding the rapes resulted in the police being dispatched to her home, where Wilson nervously refused to remove his hand from his pant pocket as instructed. The evidence of both the sex offenses and the drug offense is simple and direct, and there is no indication that the jury was incapable of segregating the proof required for each offense. The prosecutor addressed each of the offenses separately, and the evidence of each would have been admissible at separate trials. The failure of defense counsel to move to sever the counts does not constitute ineffective assistance of counsel.
"6. Ineffective assistance of counsel through failure toobject to admission of evidence with an impermissibly flawedchain of custody."
 {¶ 40} Wilson argues that his counsel was ineffective when he did not object to the admissions of the crack cocaine and P.M.'s blood standard because the chain of custody of each item was flawed.
 {¶ 41} "`The state has the burden in establishing the chain of custody of a specific piece of evidence. (Internal citations omitted.) `The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A). In order to meet its burden in establishing the chain of evidence, `the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.' (Internal citations omitted). Breaks in the chain of custody go to the weight afforded the evidence — not the admissibility of the evidence."State v. Griffin, Montgomery App. No. 20681, 2005-Ohio-3698.
 {¶ 42} Wilson stipulated to the chain of custody of the crack cocaine at trial, and his contrary argument herein is waived.
 {¶ 43} Wilson argues that P.M.'s blood was drawn in a separate room from the room in which she was examined, and that, because the phlebotomist did not testify, the chain of custody is flawed and warranted objection. Even if Wilson is correct, any error in failing to object is harmless, given the overwhelming evidence of Wilson's guilt, namely his admission and the properly admitted DNA evidence.
 {¶ 44} As Wilson did not receive ineffective assistance of counsel, Wilson's third assignment of error is overruled.
 {¶ 45} Wilson's fourth assignment of error is as follows:
 {¶ 46} "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL THROUGH THE ADMISSION OF INADMISSIBLE EVIDENCE"
 {¶ 47} Wilson argues that the trial court erred in admitting the baggie of crack cocaine and the blood standard taken from P.M.
 {¶ 48} "The decision whether to admit or exclude evidence rests within the sound discretion of the trial court and its decision in such matters will not be reversed on appeal absent an abuse of discretion and material prejudice. (Internal citations omitted). An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court."State v. Brewer, Montgomery App. No. 03CA0074, 2004-Ohio-3572.
 {¶ 49} Wilson did not object to the admission of the drug and blood evidence. Accordingly, he has waived all but plain error on appeal. As discussed above, the additional, overwhelming evidence of Wilson's guilt belies plain error. The trial court did not abuse its discretion in admitting the evidence at issue. Wilson's fourth assignment of error is overruled.
 {¶ 50} Wilson's fifth assignment of error is as follows:
 {¶ 51} "APPELLANT WAS PREJUDICED AND DENIED DUE PROCESS AND A FAIR TRIAL THROUGH THE COURT'S ERRONEOUS EVIDENTIARY RULINGS"
 {¶ 52} Wilson argues that the State's leading questions, discussed earlier, "placed words in the alleged victim's mouth regarding the force element of the sexually related charges."
 {¶ 53} The use of leading questions for Evid.R. 611(C) purposes and the limits upon its use are committed to the sound discretion of the trial court. Young.
 {¶ 54} The questions to which Wilson objected directed P.M.'s attention to the State's topic of inquiry, namely P.M.'s responses to Wilson's abuse. Had the trial court sustained the objections, the State could have easily rephrased the questions and elicited the same responses. It is not uncommon to permit some leeway with examination of youthful witnesses. Wilson has failed to establish that the court's rulings constitute an abuse of discretion. His fifth assignment of error is overruled.
 {¶ 55} Wilson's sixth assignment of error is as follows:
 {¶ 56} "APPELLANT'S CONVICTIONS WERE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE"
 {¶ 57} Wilson argues that the State failed to establish the element of force in counts 1-23.
 {¶ 58} Although both are raised by Wilson in one assignment of error, "a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." Statev. McKnight, (Nov. 30, 2005), 2005 WL 3054062. "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted.) A claim that a jury verdict is against the manifest weight of the evidence involves a different test. `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. (Internal citations omitted.)
 {¶ 59} We conclude that the evidence is legally sufficient to convict Wilson, and that the State satisfied the element of force in counts 1-11, when P.M. was less than thirteen, and in counts 12-23. Force is "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "`The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength.'" State v. Hiles (Feb. 11, 1994), Montgomery App. No. 13803 (quoting State v. Eskridge (1988), 38 Ohio App.3d 56. The force can be "subtle and psychological" and it need not be "overt or physically brutal." Id. The element of force is met if the State shows that "P.M.'s will was overcome by fear or duress." Id.
 {¶ 60} "Some showing by the State that the offender, through his own acts, compelled the victim to submit to sexual contact by `force or threat of force,' however slight, is required. Id. "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if P.M. does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." Id.
 {¶ 61} P.M. was a minor child subject to Wilson's authority and discipline; she stated that "he would be the one to give the whoopin's to the children." There was evidence that Wilson inflicted repeated violence on Diedra. P.M. testified that she was afraid of him, and that he told her it was "his place" to inflict the abuse. Because she was fearful of what Wilson might do to her, P.M. did not resist or report the abuse to others. When Wilson would enter P.M.'s bedroom to rape her, he would wake her up and pull her body to the edge of the bed.
 {¶ 62} It was for the trier of fact to determine the credibility of the witnesses at trial. Their testimony, if believed, showed a threat of force sufficient to satisfy the element of force as well as compulsion. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the element of force proven beyond a reasonable doubt. Further, after reviewing the entire record, weighing the evidence and all reasonable inferences to be drawn therefrom, and considering the credibility of the witnesses, we cannot say that the jury lost its way and created a manifest injustice. A new trial is not warranted. Wilson's sixth assignment of error is overruled.
 {¶ 63} Wilson's seventh assignment of error is as follows:
 {¶ 64} "THE TRIAL COURT ERRED IN IMPOSING A CONSECUTIVE SENTENCE THROUGH FINDING NOT MADE BY A JURY BEYOND A REASONABLE DOUBT"
 {¶ 65} Wilson argues that, because the jury did not find beyond a reasonable doubt the findings in R.C. 2929.14, the trial court was not permitted to impose maximum, consecutive sentences for Counts 22 and 23.
 {¶ 66} Wilson waived his right to raise this issue on appeal by failing to raise it before the trial court. State v. Austin
(March 11, 2005), Montgomery App. No. 20445. ("The Ohio Supreme Court has stated that `[t]he general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgement could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" (internal citations omitted). The doctrine of waiver is, however, discretionary; a court may "`consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.'" Id. (internal citations omitted.) There must be a clear defect in the trial proceeding. Id. Because we find no obvious error in the trial court proceeding, Appellant's right to present this issue is waived, and his seventh assignment of error is overruled.
 {¶ 67} Wilson's eighth assignment of error is as follows:
 {¶ 68} "THE CUMULATIVE EFFECT OF THE ERRORS OCCURRING AT TRIAL DEPRIVED APPELLANT OF A FAIR TRIAL"
 {¶ 69} "Where no individual, prejudicial error has been shown, there can be no cumulative error." State v. Jones,
Montgomery App. No. 20349, 2005-Ohio-1208 (internal citations omitted). We have identified no prejudicial errors; therefore, we cannot find cumulative error. Wilson's eighth assignment of error is overruled.
 {¶ 70} The judgment of the trial court is affirmed.
. . . . . . . . . .
Wolff, J. concurs except as to joinder of drug offense and rape offenses.
Fain, J., concurs in judgment only.
. . . . . . . . . . .