OPINION
{¶ 1} Todd D. Harrison appeals from his conviction in the Common Pleas Court of Montgomery County of illegal possession of a firearm in or on a liquor permit premises. Harrison pled guilty to this charge in exchange for the State's agreement to drop the original charge of having weapons under disability, a felony of the third degree. Harrison was sentenced to community control for a period not to exceed five years. At the sentencing hearing, the trial court noted that this was Harrison's fourth felony conviction; however, the court also noted that Harrison had successfully completed a prior term of probation in 2001, making him a candidate for further community control.
 {¶ 2} Harrison's appointed counsel on appeal has filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493, stating that he can find no arguable issues for appeal. Specifically, counsel provided that any potential errors on the part of the trial court during the course of Harrison's suppression hearing were rendered moot by his plea of guilty to illegal possession of a firearm in or on a liquor permit premises. See Huber Heights v. Duty (1985),27 Ohio App.3d 244, 500 N.E.2d 339, syllabus (holding that a plea of guilty operates as a waiver of claimed errors of the trial court in failing to suppress evidence). Furthermore, counsel stated that no meritorious issues existed regarding Harrison's sentencing because the trial court is presumed to have considered the factors of R.C. 2929.12, and there existed no obligation to impose community control under R.C. 2929.14
where this charge constituted Harrison's fourth felony conviction. SeeState v. Bailey, Montgomery App. No. 19849, 2004-Ohio-400.
 {¶ 3} On June 12, 2006, we advised Harrison of appellate counsel'sAnders brief and granted him 60 days to file a pro se brief assigning any errors for review by this *Page 3 
court. Harrison has submitted a brief in which he raises 24 assignments of error. In order to facilitate the disposition of the matter before us, we have consolidated the assignments of error and identified four predominant issues on appeal. First, Harrison claims that the trial court erred in overruling his motion to suppress where the evidence demonstrates that the officers violated his rights under the Fourth Amendment to be protected against unreasonable searches and seizures. Next, Harrison argues that his trial counsel provided ineffective assistance by failing to object to alleged errors at the suppression hearing, by improperly advising him to plead guilty instead of proceeding to trial, and by neglecting to inform him that pleading guilty would waive his rights to appeal any claimed errors on the part of the trial court at the suppression hearing. Third, Harrison alleges several instances of improper procedures relating to discovery, the testimony of witnesses during the suppression hearing, and the substitution of counsel at the sentencing hearing. Finally, Harrison argues that appellate counsel was ineffective for filing anAnders brief.
 {¶ 4} The facts underlying this appeal are as follows: On April 26, 2005, an unidentified woman made a 911 call claiming that a black man wearing a black coat and white shirt was walking around the parking lot of OG's Sports and Spirits on Salem Avenue in Montgomery County with a gun. The caller identified the gun as a small black handgun with a red sensor attached to it. When she called, the caller stated that the man had been standing next to a blue car. However, she also stated that she left that area of the parking lot, so she could no longer see him.
 {¶ 5} A dispatcher notified local police of the incident. The dispatcher indicated that there was a black man standing next to a blue car in the parking lot of OG's on *Page 4 
Salem Avenue, and he was carrying a gun with a laser on it. Officer Jon Moeggenberg testified that he was the first to arrive at the scene. He stated that he parked around the corner from OG's, took a weapon out of the trunk of his vehicle, and walked up to the parking lot. Because of prior shootings and one homicide at this location, Moeggenberg provided that the decision to park away from the lot and carry an extra weapon was for safety reasons. At the lot, Moeggenberg testified that there were two females standing in front of the bar who advised him that the man with the gun had just left and was pulling out of the parking lot onto Salem Avenue southbound. He also stated that the women pointed in the direction of Harrison's vehicle turning southbound onto Salem Avenue. Moeggenberg did not inquire anything further from these women; however, he testified that he relayed the information from these two women over the police radio.
 {¶ 6} At the same time, Sergeant Lori Coleman arrived at the scene. Coleman testified that when she heard the vehicle was leaving, she was in a position to observe it and immediately pulled out of the parking lot behind it. According to Coleman, she initiated a traffic stop of the vehicle by turning on her lights in an effort to signal to the driver, Harrison, to pull over to the right. Coleman also stated that she used her siren at one point. Coleman provided that Harrison did not immediately pull over; instead, he continued driving for approximately one-half mile before turning into a BP gasoline station. Coleman testified that during the pursuit, she noticed Harrison look back in her direction several times.
 {¶ 7} Coleman further stated that she initiated a felony traffic stop at the BP station. A felony stop, according to Coleman, occurs when the police receive a call involving a possible weapon. Procedurally, the officers exit their vehicles with their *Page 5 
weapons drawn. They order the subjects to exit their vehicles, keep their hands up, place their keys on the roof of the vehicles, and walk backwards toward the officers keeping their hands away from their bodies. At that point, an officer handcuffs the subjects while still at gunpoint. Coleman testified that Harrison did not comply with the officers' orders. She stated that he did not immediately exit the vehicle; however, when he did, he also was reaching into his pockets, around his waist and inside his coat. Eventually, two county officers took Harrison to the ground and handcuffed him.
 {¶ 8} Harrison was patted down and placed in the back of Coleman's cruiser. No weapons or other objects were found on his body. Officer Moeggenberg testified that upon his arrival at the BP station, he was instructed to obtain information from Harrison and to conduct a tow inventory. Sergeant Coleman testified that it is department policy to tow a vehicle when the driver is placed under arrest and the registered owner of the vehicle is not present with a valid driver's license. She further stated that a tow inventory "is to protect the police officers, the tow yard and the person's property who owns the vehicle, and we record everything that's in the car, everything that's in every compartment of the car so that the person won't say we stole something or that the tow people stole something or, you know, things like that." (Supp. Tr. at 20.)
 {¶ 9} Moeggenberg testified that when he opened the cruiser door to get Harrison's social security number, he noticed a laser pointer mechanism on the floorboard between his legs. He immediately notified Sergeant Coleman. Moeggenberg stated that Harrison identified the object as his "pen" when the officer reached in to pick it up. (Supp. Tr. at 75.) *Page 6 
 {¶ 10} Furthermore, Moeggenberg testified that, as part of the tow inventory, he found a .45 caliber semi-automatic pistol inside a black purse in the trunk of Harrison's vehicle. According to Moeggenberg, the gun had an adhesive substance underneath the frame of the barrel and in front of the trigger guard. He also stated that he gained access to the trunk by unlocking it with a 31-inch asp from the inside. To do so, he had to pull down the rear seat of the vehicle.
 {¶ 11} After finding the gun, Sergeant Coleman asked for a CCH (Computerized Criminal History) on Harrison to determine if he had any prior convictions. She testified that the dispatcher advised her of one charge for aggravated trafficking and one charge for felonious assault. Consequently, Coleman charged Harrison with weapons under disability, inducing panic, and failure to comply. He was read his Miranda rights, at which point he refused to speak unless in the presence of a lawyer, and taken to the police station.
 {¶ 12} Harrison was subsequently indicted on one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2). In August, 2005, he filed a motion to suppress evidence. An evidentiary hearing was held, and in January, 2006, the trial judge rendered its decision overruling Harrison's motion.
 {¶ 13} As part of a plea agreement, Harrison pled guilty in February, 2006, to one count of illegal possession of a firearm in or on a liquor permit premises, in violation of R.C. 2923.121(A). In exchange for this plea, the State agreed to drop the pending indictment. Thus, Harrison's charge was reduced from a third degree felony to a fifth degree felony. In March, 2006, Harrison was sentenced to community control for a period not to exceed five years. *Page 7 
 {¶ 14} Pursuant to our responsibilities under Anders, we have conducted a complete review of the record in this matter, including the transcripts from the suppression hearing, the plea hearing, and the sentencing hearing. Based on that review, we agree with appellate counsel that Harrison validly waived his rights and entered a guilty plea following a proper Crim.R. 11 plea hearing. We also agree that the potential sentencing issue raised by appellate counsel also lacks arguable merit. Thus, appellate counsel's request to withdraw is granted.
 {¶ 15} We next turn to Harrison's assignments of error raised in his pro se brief. Harrison first claims that the evidence from the suppression hearing demonstrates that the officers violated his Fourth Amendment rights when they pulled him over for a traffic stop based on unidentified witness testimony, searched his entire vehicle, and confiscated the gun from a purse in the trunk.[1] More specifically, Harrison contends that the officers lacked probable cause to make the initial stop because the 911 call was made anonymously and the witnesses at OG's parking lot failed to provide their names. Furthermore, he argues that Officer Moeggenberg illegally broke into the trunk of his car with a screwdriver and searched its contents and the contents of the black purse in which the gun was found.
 {¶ 16} This court does not find that there is arguable merit to Harrison's first claim. Based on the record, we find that the gun was obtained pursuant to a valid search under the automobile exception to the Fourth Amendment's warrant requirement. The automobile exception permits police to conduct a warrantless search of a vehicle *Page 8 
and containers in the vehicle if the officers possess independent probable cause that the vehicle and/or containers contain evidence related to the crime under investigation. U.S. v. Ross (1982),456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed. 572; State v. Mills (1992),62 Ohio St.3d 357, 367, 582 N.E.2d 972.
 {¶ 17} We believe the record demonstrates that the officers had probable cause to arrest Harrison, and consequently, to search his vehicle for any weapons related to that arrest. "[P]robable cause is a flexible, common sense standard." Texas v. Brown (1983), 460 U.S. 730,742, 103 S.Ct. 1535, 75 L.Ed.2d 502. It exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142. See, also, State v. Timson (1974), 38 Ohio St.2d 122,311 N.E.2d 16, at paragraph one of the syllabus. Moreover, probable cause is a concept that must be based on the totality of the circumstances because it "deals with probabilities-the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act * * * ." State v. Snyder (Aug. 10, 1994), Montgomery App. No. 14089,1994 WL 420918, at *2 (citations omitted).
 {¶ 18} The facts and circumstances in the present case warranted Sergeant Coleman's belief that Harrison had been involved in the incident at OG's bar that lead to his arrest. First, the officers were aware that on several previous occasions, OG's bar was the site of various shootings and one homicide. Moreover, the 911 caller informed the dispatcher that a man matching Harrison's description was walking around OG's parking lot with a gun and attached red sensor. Upon his arrival at the scene, Officer *Page 9 
Moeggenberg was able to corroborate the information from the 911 call with eyewitnesses identifying Harrison's vehicle and claiming that Harrison was the man with the gun. At this point, we find that a reasonable man under similar circumstances could have believed that Harrison had committed a crime at OG's. However, his failure to comply with Sergeant Coleman's request to pull over on Salem Avenue, in addition to his failure to comply with the officers' orders once at the BP station, only magnified this belief further. Given the totality of the circumstances, we find that Sergeant Coleman had probable cause to arrest Harrison. Having had probable cause to make the arrest, we also find that the search of his automobile, which resulted in discovery of the gun, was a valid search under the automobile exception to the Fourth Amendment's warrant requirement.
 {¶ 19} We note that the trial court also found that probable cause existed to arrest Harrison. In justifying the search, however, it misapplied the Ohio Supreme Court's decision in State v. Murrell (2002),94 Ohio St.3d 489, 764 N.E.2d 986, in which the court held that "a police officer [who] has made a lawful custodial arrest of the occupant of an automobile * * * may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Emphasis added.) Id. at syllabus. Here, the search of Harrison's vehicle went beyond the parameters of a legal search incident to an arrest when the officer opened and looked into the truck. This fact, however, does not preclude us from finding that the search did not violate Harrison's Fourth Amendment rights when analyzed under the automobile exception. Therefore, we find that Officer Moeggenberg's search of the vehicle did not violate the Fourth Amendment, albeit for different reasons than stated by the trial court. Accordingly, Harrison's first *Page 10 
assignment of error is overruled.
 {¶ 20} Harrison's second assignment of error is that he was provided ineffective assistance of counsel.[2] He contends that his trial counsel failed to object to alleged errors that took place at the suppression hearing and improperly informed him of his rights when making a guilty plea.
 {¶ 21} A claim of ineffective assistance of counsel is reviewed under the two-part test provided in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To prevail on a claim of ineffective assistance of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Stevens, Montgomery App. No. 19572,2003-Ohio-6249, at 1J33.
 {¶ 22} Furthermore, a party's failure to object to alleged wrongful conduct waives all but plain error for the purposes of appellate review.State v. Gardner, Montgomery App. No. 21357, 2007-Ohio-182, at]}46 (citation omitted). In order to find plain error, the reviewing court must find that " `but for the error, the outcome of the trial clearly would have been otherwise.' " State v. Moore, Montgomery App. No. 20465,2005-Ohio-4531 atf71, quoting State v. Ballew (1996), 76 Ohio St.3d 244,251, 667 N.E.2d 369. A claim of ineffective assistance of counsel cannot be predicated upon a matter which did not constitute error. State v.Woullard, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, at ]}44 (citation omitted). *Page 11 
 {¶ 23} Here, Harrison argues that his counsel at the suppression hearing was ineffective because he did not object to the trial judge delivering the oath to Sergeant Coleman immediately following her testimony. The record indicates that upon noticing its mistake, the trial court swore in the witness and provided the following:
 {¶ 24} "THE COURT: * * * You are Officer Coleman; is that correct?
 {¶ 25} "THE WITNESS: Correct.
 {¶ 26} "THE COURT: And you just provided testimony?
 {¶ 27} "THE WITNESS: Correct.
 {¶ 28} "THE COURT: And yeah, you were not sworn prior to your testimony.
You were sitting there when I came in and quite frankly I just forgot to swear you in. Does either counsel want to inquire as to her now having been sworn or have any objection they want to raise about the nature of her testimony?
 {¶ 29} "MR. BENNETT: No, your Honor.
 {¶ 30} "THE COURT: All right.
 {¶ 31} "MS. CARPER: No, Your Honor." (Supp. Tr. at 61-62.)
 {¶ 32} Because neither counsel objected to the trial court's correction of its mistake, we must determine whether this alleged error constitutes plain error. We find that it does not. Harrison has failed to demonstrate how the outcome of the hearing would have been different had the oath been delivered to Sergeant Coleman prior to her testimony.
 {¶ 33} Next, Harrison argues that his counsel was ineffective in not properly advising him of his rights in pleading guilty instead of proceeding to trial. Again, our review of the record does not indicate that counsel was ineffective. At the plea hearing *Page 12 
held on February 7, 2006, the trial court more than adequately informed Harrison of multiple effects of pleading guilty, to which Harrison replied that he understood. Satisfied with his responses, the trial court stated, "The Court finds the Defendant appeared in open court and after being advised orally by the Court of the contents of the plea form that he signed his name. The Court further finds the Defendant understood that waiver, the waiver of constitutional rights, the nature of the offense, the maximum penalties that could be imposed, that he is eligible to be sentenced to community control sanctions and that he may be required to pay a fine.
 {¶ 34} "The Court further finds the Defendant understood the effect of his plea, the plea was made voluntarily and there was factual basis for the plea." (Plea Tr. at 10.)
 {¶ 35} We find no evidence in the record of counsel's failing to meet an objective standard of reasonableness in serving Harrison's needs. Moreover, should counsel have failed to inform Harrison of the effect of a guilty plea, the trial court sufficiently outlined his rights and assured that his plea was knowing and voluntary. Therefore, we do not find merit in this claim of ineffective assistance of counsel.
 {¶ 36} Thus, we find no ineffective assistance of counsel in this case. The record shows that counsel had Harrison's best interest in mind during the case and that he did not violate any essential duty owed Harrison. See Strickland, supra. In addition, the record demonstrates that Harrison was sufficiently informed of the effects of pleading guilty, and that he made his plea voluntarily. Accordingly, Harrison's second assignment of error is overruled.
 {¶ 37} In his third assignment of error, Harrison raises three issues relating to improper procedures: 1) the State failed to provide evidence requested by defense *Page 13 
counsel; 2) the trial court failed to separate witnesses; and 3) the trial court improperly permitted
 {¶ 38} substitution of counsel at the suppression hearing.[3]
 {¶ 39} Harrison first contends that the State withheld evidence. The record, however, does not support this claim. At the final pre-trial conference on January 26, 2006, the State informed the court and Harrison that it had just received an audio copy of the 911 call in this matter. The parties agreed that the State would make a copy for defense counsel. Based on the record, we do not find this to constitute a discovery violation.
 {¶ 40} Harrison also argues that the trial court failed to separate witnesses when it allowed Officer Moeggenberg and Sergeant Coleman to remain in the courtroom during each other's testimonies. According to Harrison, the trial court's conduct violated Evid.R. 615, which states, "Except as provided in division (B) of this rule, at the request of any party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. * * * "
 {¶ 41} Here, the trial court honored the State's request to separate witnesses that would have been testifying at trial. However, the State also asked that Officer Moeggenberg remain at counsel's table as the representative of the State. Defense counsel did not object.
 {¶ 42} We find that the record does not demonstrate that Harrison was prejudicially affected by the trial court's decision. Based upon our review, there is no *Page 14 
indication of collusion between the two police officers, nor is there any evidence of outside-the-courtroom conversations that effectively tainted either officer's testimony. See State v. Roberts (2000),139 Ohio App.3d 757, 745 N.E.2d 1057 (refusing to declare a mistrial where the defendant failed to identify what testimony the witness allegedly discussed with the officers or that the testimony of any witness was tailored to conform to the testimony of the officers).
 {¶ 43} Finally, Harrison claims that the trial court erred in allowing substitute counsel to represent him at the sentencing hearing. We disagree.
 {¶ 44} At the hearing, the trial court appointed substitute counsel, Mr. Wehner, to stand in the place of Harrison's former defense attorney, who was unavailable. The court let this be known to Harrison prior to the proceedings:
 {¶ 45} "THE COURT: * * * Mr. Harrison, Mr. Wehner has, as a friend of the
Court, agreed to stand up with you this morning for sentencing. It's an agreed sentence of community control sanctions. It's my understanding you want to take care of this.
 {¶ 46} "DEFENDANT: Yes, ma'am.
 {¶ 47} "THE COURT: And do you have any objection to Mr. Wehner
standing up with you this morning?
 {¶ 48} "DEFENDANT: No, ma'am." (Disposition Tr. at 2.)
 {¶ 49} We find that Harrison has failed to demonstrate how representation by substitute counsel at his sentencing hearing was biased or prejudicially affected his rights. In addition, this court has stated that a " `jointly agreed-upon sentence [is] to be protected from review precisely because the parties agreed that the sentence is appropriate.' " State v. Haney, Clark App. No. 2005-CA-100,2006-Ohio-5578, at]}16 *Page 15 
(citation omitted). The record indicates that Harrison agreed to a sentence of community control not to exceed five years. Duly noting this agreement, the trial court sufficiently detailed the terms of the sentence and Harrison's right to appeal. We are not persuaded that Mr. Wehner's standing in the place of Harrison's former attorney denied Harrison his constitutional right to counsel.
 {¶ 50} In conclusion, we find no procedural errors on the part of the trial court or the State which prejudicially affected Harrison's rights. Thus, his third assignment of error is overruled.
 {¶ 51} Harrison's fourth and final claim is that appellate counsel was ineffective for filing an Anders brief. Having found no arguable merit to the issues raised by Harrison in his brief, we find this fourth assignment moot.
 {¶ 52} In summary, we agree with Harrison's appointed counsel that there are no arguable issues to present in this appeal and we are convinced, after a thorough review of the record, that Harrison received effective representation at trial and in this appeal.
 {¶ 53} Based on the foregoing discussion, Harrison's pro se assignments of error are overruled. The judgment of the trial court is affirmed.
FAIN and VALEN, JJ., concur.
(Hon. Anthony Valen, retired from the 12th Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio)
[1] Harrison's first claim is derived from assignments of error 1 through 12 and 14 through 16.
[2] Harrison's second claim is derived from assignments of error 13 and 19-22.
[3] Harrison's third claim is derived from assignments of error 17, 18 and 23. *Page 1