[Cite as *State v. Daniel*, 2011-Ohio-2821.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24151 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3568 |
| v. | : | |
| | : | |
| DEANGELO DANIEL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 10th day of June, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., Prosecuting Attorney; ANDREW T. FRENCH, Asst. Pros. Attorney, Atty. Reg. No.0069384, P.O. Box 972, Dayton, OH 45422
        Attorneys for Plaintiff-Appellee

BYRON K. SHAW, 4800 Belmont Place, Huber Heights, OH 45424
        Attorney for Defendant-Appellant

. . . . . . . . .

BROGAN, J. (by Assignment):

{¶ 1} Deangelo Daniel appeals from his conviction of aggravated robbery with a firearm specification. The victim of the aggravated robbery was Matthew Morgan. Morgan sold clothing and shoes out of the back of his van. His regular customers could call Morgan

on his cell phone to set up a time to purchase items.

{¶ 2}   On October 21, 2009, Morgan received a call from an interested customer. Morgan was concerned about the call because it came from a restricted number and Morgan did not recognize the caller's voice.   The caller requested that Morgan come out at night and Morgan's regular customers knew he did not do night business.   The next day the caller again called and provided Morgan his phone number when Morgan requested it.   The caller told Morgan to meet him at 417 Parkwood Avenue but when Morgan went there the home appeared vacant and Morgan saw no one at the location.   Morgan then left the area.

{¶ 3}   Morgan called the phone number provided by the caller and the same man answered.   The caller told Morgan to return to the location.   Morgan immediately returned to the location and pulled into the driveway at 417 Parkwood.   The caller was still on the line with Morgan and began walking toward him.   Morgan then saw the man he later identified as Daniel.

{¶ 4}   Morgan got out of the van, leaving the keys in the ignition, and opened up the doors of the van so that Daniel could look through the merchandise.   Daniel however showed little interest in what Morgan had to sell, even in the shoes that he had been specifically asking about on the phone.   Moments later Morgan looked up just in time to see another man creeping down the embankment with his head covered and carrying a chrome-plated revolver.

{¶ 5}   The gunman quickly came around the van and, pointing the gun at Morgan's chest, announced, "You know what this is."   As Morgan put his hands up and told the gunman to "just go on and take it," Daniel went around the van, closed up all the doors, then jumped into the driver's seat and started up the van.   The gunman, paying no attention to

Daniel, went through Morgan's pockets, took Morgan's money and wallet, and then jumped in the passenger seat of the van with Daniel.

{¶ 6} Morgan stood there watching as Daniel and the gunman drove off together, but the van suddenly stopped and the gunman got out. Morgan took off running but tripped over a tree branch and fell to the ground. The gunman caught up to Morgan, reached down and took Morgan's cell phone, which was clipped to his waist. The gunman then got back into the van and Daniel drove off with the gunman in the passenger seat.

{¶ 7} Morgan called the police and reported the incident. He provided the police with Daniel's phone number and they were able to trace it back to Daniel's cell phone account. Police were also able to determine that Daniel had contacted his cell phone provider to have his number changed within hours of the robbery.

{¶ 8} The next day, Morgan identified Daniel from a photo spread as the "set up" man for the robbery. Four days later Morgan's van was found abandoned at the rear of apartments at 3754 Kings Highway. This location was adjacent to an apartment complex where Daniel had been living.

{¶ 9} At trial, Morgan testified he was "100 percent sure" Daniel was the man who set up the robbery and drove off with his van. Daniel presented no witnesses in his defense and he did not testify.

{¶ 10} In his first assignment, Daniel contends the trial court erred in not permitting him to admit into evidence a police report that he contends was a business record admissible under Evid.R. 603(6).

{¶ 11} During the cross-examination of Officer Gregory Mills of the Dayton Police

Department, counsel attempted to question Mills about statements Morgan made to him and which statements were included in a police report prepared by Mills. Counsel contended these statements included in the report were inconsistent with Morgan's testimony. The trial court sustained the State's objection that the police report was inadmissible hearsay.

{¶ 12} Daniel argues that the police report should have been admitted under the hearsay exception provided for business records under Evid.R. 803(2). Daniel claimed the police report contained an inconsistent statement related to Morgan's trial testimony that when he first pulled into the driveway, he only saw Daniel and that the gunman came upon him later. Daniel claims the police report revealed that Morgan told Officer Mills that he saw two men standing in the driveway.

{¶ 13} The State argues that the police report was not admissible under the business records exception in Evid.R. 803(2) if the report recites hearsay statements received by the officer from others. Secondly, the State argues that the business records exception under Evid.R. 803 and 804 is intended to introduce hearsay as substantive evidence but not for impeachment purposes. The State contends that use was not intended by Evid.R. 803(6). Lastly, the State argues that any error in denying admission of Mills' police report was harmless since Mills testified that Morgan told him that he saw two individuals standing in the vicinity of 417 Parkwood as he pulled into the driveway. (See Tr. 24).

{¶ 14} We agree with the State that Daniel's first assignment must be overruled.

{¶ 15} A police report is not admissible under the business-records exception in Evid.R. 803(6), if the report recites hearsay statements received by the officer from others. *Randle v. Gordon* (Oct. 29, 1987), Cuyahoga App. No. 52961, unreported at 6. See also

*State v. Granderson*, 177 Ohio App.3d 424, 2008-Ohio-3757 ("It is well established that police reports are generally inadmissible hearsay and should not be submitted to the jury.").

{¶ 16} We also agree that any error in the court's denying the admission of the police report is harmless in light of Mills' trial testimony about what Morgan reported to him. The appellant's first assignment of error is overruled.

{¶ 17} In his second assignment, Daniel contends his conviction was against the manifest weight of the evidence. He notes that no evidence was recovered from Morgan's van linking him to the alleged victim's robbery.

{¶ 18} The State argues that Daniel's conviction was not against the manifest weight of the evidence. The State notes that Daniel initially called Morgan from a restricted phone number and asked him to come to a house which was vacant. The State notes that Daniel showed little interest in the merchandise before the gunman appeared and the gunman never pointed his gun at Daniel nor went through his pockets as he did Morgan. The State notes that Morgan testified that Daniel stopped the van so the gunman could retrieve Morgan's cell phone, the link connecting Daniel to the robbery. Finally, the State notes that Daniel quickly changed his cell phone number after the robbery.

{¶ 19} A weight-of-the-evidence argument concerns "the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The manifest weight of the evidence "indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them." Id.

A reviewing court, therefore, when evaluating the merits of a manifest-weight-of-the-evidence argument, must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine:

{¶ 20} "Whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 21} The evidence in this matter does not weigh heavily against the conviction. There is no evidence the jury lost its way and created a manifest miscarriage of justice. Daniel's argument that he was just an innocent bystander is simply belied by the evidence presented to the jury. The evidence of his guilt was compelling and supports the jury's verdict. The appellant's second assignment of error is overruled.

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)


Copies mailed to:

Andrew T. French, Esq.
Byron K. Shaw, Esq.
Hon. Gregory F. Singer