[Cite as *State v. Underwood*, 2011-Ohio-5418.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                          :
                                       :      Appellate Case No. 24186
        Plaintiff-Appellee             :
                                       :      Trial Court Case No. 10-CR-281
v.                                     :
                                       :
MICHAEL J. UNDERWOOD                   :      (Criminal Appeal from
                                       :       Common Pleas Court)
        Defendant-Appellant            :
                                       :

. . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2011.

. . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384,
Montgomery County Prosecutor's Office, Appellate Division, Montgomery County
Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

DANIEL R. ALLNUTT, Atty. Reg. #0085452, Post Office Box 234, Alpha, Ohio
45301
        Attorney for Defendant-Appellant

. . . . . . . . .

FAIN, J.

{¶ 1} This matter is before the Court on the direct appeal of
Defendant-appellant Michael Underwood from his conviction and sentence for
Aggravated Robbery.   Underwood argues that his conviction is against the
manifest weight of the evidence and that he was denied the effective assistance of

trial counsel. He maintains that the trial court erred in refusing to allow police dispatch records into evidence and that the trial court erred in overruling his motion for a judgment of acquittal because the jury verdicts were inconsistent. Underwood also claims that the State committed prosecutorial misconduct during closing arguments.

{¶ 2} We conclude that Underwood's conviction is not against the manifest weight of the evidence and that he was not denied the effective assistance of trial counsel. We conclude that the trial court did not err in its evidentiary rulings, nor did the court err in denying Underwood's motion for acquittal. We also conclude that the State did not commit prosecutorial misconduct. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} On a January evening in 2010, Underwood and his girlfriend Amber Shatto were smoking crack cocaine at her trailer. Underwood left around 8:00 or 9:00 p.m. and did not return until 5:00 a.m. the next morning.

{¶ 4} Shortly before 10:00 p.m. on the same evening, Kurtis Wallace was headed to The Men's Club. As he drove, he spoke on the phone with Shatto, whom he had recently met, and told her where he was going. In the parking lot of the club, Wallace was approached by Underwood, whom Wallace had known for many years. Underwood asked Wallace for a couple of dollars. As Wallace pulled his money out of his pocket, he saw that Underwood was holding a black handgun. Underwood demanded that Wallace give him all of his money. Underwood grabbed Wallace's $270 and ran away, heading into a nearby trailer

park.   Initially, Wallace chased Underwood, but then stopped and called the police.

{¶ 5}   When deputies arrived on the scene, Wallace explained what had occurred and provided the officers with Underwood's name and his physical description.   A canine unit was requested, and the canine was able to track Underwood to the area of a trailer in which his girlfriend Amber Shatto lived.   A black coat was found in the street next to the trailer; Wallace identified it as being the coat Underwood was wearing during the robbery.   However, the deputies were unable to find Underwood that night.

{¶ 6}   The following day, Wallace identified Underwood in a photo spread. Underwood was arrested a couple of weeks later.

{¶ 7}   Underwood was indicted on one count of Aggravated Robbery with a firearm specification.   A jury found him guilty of Aggravated Robbery, but not guilty of the specification.   Underwood filed a motion for a judgment of acquittal, arguing that the jury's verdicts were inconsistent.   The trial court overruled his motion and sentenced Underwood to five years incarceration.   From his conviction and sentence, Underwood appeals.

II

{¶ 8}   Underwood's First Assignment of Error is as follows:

{¶ 9}   "THE GUILTY JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 10} In his First Assignment of Error, Underwood argues that his conviction for Aggravated Robbery is against the manifest weight of the evidence.   When reviewing a judgment under a manifest weight standard of review, "[t]he court

reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 11} Underwood was convicted of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), which states in pertinent part, "No person, in attempting or committing a theft offense * * *, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 12} Underwood's argument centers around his claim that Wallace's testimony was not credible. Although a manifest weight claim permits a reviewing court to consider witness credibility, weight and credibility questions are primarily for the finder of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Substantial deference must be extended to the factfinder's determination of credibility because the factfinder has had the opportunity to see and hear the witnesses on the stand. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288.

{¶ 13} The State's evidence shows that Wallace had known Underwood for 23 years and that he immediately recognized Underwood as the robber. When

Wallace tried to give Underwood the couple of dollars that he had requested, Underwood pulled out a gun and demanded all of Wallace's money. Underwood took the money and ran away, fleeing into a nearby trailer park, where his girlfriend Amber Shatto lived. The coat that Underwood was wearing during the robbery was found in the street, next to Shatto's trailer.

{¶ 14} Although Shatto and Underwood spent the early evening smoking crack together, Underwood left from about 8:00 or 9:00 p.m. until at least 5:00 a.m. the next day, while the robbery occurred shortly before 10:00 p.m. Moreover, after Underwood's arrest, Shatto called Wallace and offered him money, in the hope of resolving the situation out of court.

{¶ 15} The jury's verdict shows that despite defense counsel's efforts to discredit Wallace, the jury believed his testimony. A jury has not lost its way "simply because it chose to believe the State's witnesses and disbelieve Defendant, which it was entitled to do." *State v. White,* Montgomery App. No. 20324, 2005-Ohio-212, ¶69.

{¶ 16} Underwood's First Assignment of Error is overruled.

III

{¶ 17} Underwood's Second Assignment of Error is as follows:

{¶ 18} "THE STATE'S REPRESENTATIVE DURING THE TRIAL PROCEEDING COMMITTED PROSECUTORIAL MISCONDUCT AND THIS LED THE JURY TO AN IMPROPER FINDING OF GUILT."

{¶ 19} In his Second Assignment of Error, Underwood claims that the prosecutor committed prosecutorial misconduct during closing arguments by

arguing two facts not in evidence and by making unfounded accusations against Underwood's attorney.

{¶ 20} We begin by noting that Underwood did not object to two of the three alleged instances of prosecutorial misconduct, and has therefore forfeited all but plain error with regard to those two claims. *State v. Wilson,* Montgomery App. No. 20910, 2005-Ohio-6666, ¶12, citation omitted. There is no plain error unless it is clear that, but for the error, the outcome of the trial would have been different. *State v. Moreland* (1990), 50 Ohio St.3d 58, 62.

{¶ 21} When analyzing a claim of prosecutorial misconduct, we must consider whether the prosecutor's statements were improper, and if so, whether those statements prejudicially affected the defendant's substantial rights. *State v. Lott* (1990), 51 Ohio St.3d 160, 165. The touchstone of the analysis is the overall fairness of the trial, not the culpability of the prosecutor. *Wilson,* supra, at ¶10, citing *State v. Moore,* Montgomery App. No. 20465, 2005-Ohio-4531. "In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial," and if "it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed." Id., citing *Moore,* supra. A prosecutor is entitled to considerable latitude during his closing argument, may freely comment on what the evidence presented at trial has shown and may comment on what reasonable inferences may be drawn therefrom. Id., citing *Moore,* supra. See, also, *State v. Treesh* (2001), 90 Ohio St.3d 460, 466; *Lott,* supra, at 165.

{¶ 22} Underwood first accuses the prosecutor of misconduct for accusing the defense attorney of intentionally misleading Wallace during cross-examination, while trying to impeach him on prior inconsistent statements. During closing argument the prosecutor stated: "And it's interesting because one thing that Kurtis was allowed to see was the transcript from the prior hearing where he testified. And Kurtis found where [the defense counsel] was trying to mislead him about his testimony regarding the phone call and Kurtis found in the records that he was allowed to see that the judge had asked him a very specific question about one single phone call that Amber had made to him."

{¶ 23} This comment accurately summarized a brief portion of Wallace's cross-examination, when Wallace pointed out that the defense counsel was "misconstruing my words" and "mixing my words." In particular, when Wallace was shown the transcript of his testimony from the preliminary hearing, Wallace pointed out to defense counsel that his line of questioning was misleading because the answers to the questions at the preliminary hearing were being taken out of context and were being misread. Thus, the prosecutor's statements accurately reflected Wallace's expressed belief that defense counsel was trying to mislead him.

{¶ 24} Underwood also accuses the prosecutor of misconduct for arguing facts not in evidence when he said that Shatto had offered Wallace money for not testifying at the preliminary hearing. Wallace testified that both Underwood and Shatto had contacted him about "not showing up for court." Shatto admitted on direct examination that she contacted Wallace in an attempt to settle the case without going to court, but she denied offering Wallace any money. The State's

cross-examination of Shatto included the following colloquy:

{¶ 25} "Q. And do you recall trying to negotiate with [Wallace] to pay him some money so he wouldn't come to court?

{¶ 26} "A. I wasn't trying to pay him so he wouldn't go to court. I was just trying to resolve the situation in a situation more –

{¶ 27} "Q. Outside of the court process?

{¶ 28} "A. Yeah."

{¶ 29} Although Shatto denied trying to pay Wallace not to appear in court, she acknowledged trying to resolve the situation outside of court, which would presumably involve compensating Wallace for his loss. The prosecutor's characterization of this evidence as Shatto having attempted "to pay off the victim" was a reasonable inference.

{¶ 30} Finally, Underwood argues that it was misconduct for the prosecutor to say, during rebuttal argument, that Shatto had told Wallace that she wanted to hook up with him in order to set him up to be robbed. Wallace testified that he and Shatto had been speaking for several days prior to the robbery about hooking up. Although he had spoken with Shatto a few times on the evening of the robbery, he did not specifically state that he and Shatto had arranged to meet that night. Nevertheless, the State asserted that Shatto had arranged to meet Wallace at The Men's Club that night. The defense objected, pointing out that Wallace did not testify that he and Shatto had specific plans for that night. The trial court sustained the objection.

{¶ 31} Underwood insists that the trial court should have promptly given a

limiting instruction to the jury, but he offers no suggestion as to what instruction should have been given. A limiting instruction is normally an instruction that a jury may properly consider a piece of evidence for one purpose, but not for other purposes. Here, we understand Underwood's position to have been that the prosecutor's comment was not proper argument at all – not that the jury could consider it for one purpose, but not for other purposes. More importantly, Underwood did not request any relief beyond the sustaining of his objection to this line of argument. Considering the closing argument as a whole, we conclude that this single inaccuracy, an objection to which was sustained, does not warrant reversal of the judgment. The trial court did instruct the jury that the evidence does not include closing arguments, and a jury is presumed to follow the trial court's instructions. See, e.g., *State v. Jones,* 90 Ohio St.3d 403, 414, 2000-Ohio-187.

{¶ 32} Underwood's Second Assignment of Error is overruled.

IV

{¶ 33} Underwood's Third Assignment of Error is as follows:

{¶ 34} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION WHEN IT RULED THE DISPATCH RECORDS SOUGHT BY DEFENSE COUNSEL INADMISSIBLE."

{¶ 35} In his Third Assignment of Error, Underwood contends that the trial court should have admitted the police dispatch records into evidence. A trial court has broad discretion in the admission and exclusion of evidence, and an appellate court must not interfere with that determination "[u]nless the trial court has clearly abused its discretion." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25. The

abuse of discretion standard is defined as "'[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.'" *State v. Boles,* Montgomery App. No. 23037, 2010-Ohio-278, ¶18, quoting Black's Law Dictionary, Eighth Edition (2004), at 11.

**{¶ 36}** We have previously held that "[a] police report is not admissible under the business-records exception in Evid.R. 803(6), if it recites hearsay statements received by the officer from others." *State v. Daniel,* Montgomery App. No. 24151, 2011-Ohio-2821, ¶15. Furthermore, because police reports are generally replete with inadmissible hearsay, they should not be submitted to the jury. Id., citing *State v. Granderson,* 177 Ohio App.3d 424, 2008-Ohio-3757, ¶77. We see no reason to treat police dispatch records differently than police reports.

**{¶ 37}** The State contends that the dispatch record was being offered by Underwood to prove the place where the robbery occurred, which would be hearsay, since the dispatcher did not know where the robbery occurred, but was merely relaying the report of another. Underwood contends that the dispatch record was being offered to prove the place to which the police were dispatched (in an effort to impeach the testifying police officers), which would not be hearsay contained within the dispatch record, since the dispatcher did know, of his or her own personal knowledge, to where the police were dispatched. The record is inconclusive on this point, since the discussion concerning the State's objection took place off the record. It is the appellant's duty to portray error in the record. Underwood has failed to demonstrate, in this record, that the trial court erred in ruling that the dispatch record contained inadmissible hearsay evidence.

{¶ 38} Underwood's Third Assignment of Error is overruled.

V

{¶ 39} Underwood's Fourth Assignment of Error is as follows:

{¶ 40} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR ACQUITTAL."

{¶ 41} In his Fourth Assignment of Error, Underwood submits that the trial court should have granted his motion for judgment of acquittal because the jury rendered inconsistent verdicts when it convicted him of Aggravated Robbery, but found him not guilty of the attached firearm specification. Underwood concedes that we have previously held that a jury's not-guilty verdict on a firearm specification does not create an inconsistent verdict that invalidates a guilty finding on the principal charge of Aggravated Robbery, in violation of R.C. 2911.01(A)(1). *State v. Gardner,* Montgomery App. No. 21027, 2006-Ohio-1130, ¶ 34. In *Gardner,* we stated that "[t]his court, as well as other Ohio courts, have consistently held that a finding of guilty on a principal charge but not guilty on a specification attached to the charge does not render the verdict inconsistent and thus invalidate the guilty verdict on the principal charge, at least where legally sufficient evidence supports the guilty verdict on the principal charge. *State v. Wilson* (January 21, 1992), Clark App. No. 2803; *State v. Talley* (1993), Montgomery App. No. 136839; *State v. Boyd* (1996), 110 Ohio App.3d 13; *State v. Woodson* (1985), 24 Ohio App.3d 143." Id. at ¶ 32. We explained that because a conviction for Aggravated Robbery is not dependent upon a specification, any specification must be considered after, and in

addition to, a finding of guilt on the principal charge. Id. at ¶ 33. "Accordingly, any determination as to the specification cannot change the finding of guilt on the principal charge." Id., citing *State v. Perryman* (1976), 49 Ohio St.2d 14.

{¶ 42} Underwood urges us to ignore the doctrine of stare decisis and to revisit this issue. We decline to do so.

{¶ 43} Underwood's Fourth Assignment of Error is overruled.

VI

{¶ 44} Underwood's Fifth Assignment of Error is as follows:

{¶ 45} "THE APPELLANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL, AND THESE MISTAKES LED THE JURY TO YIELD AN UNJUST VERDICT."

{¶ 46} In his Fifth Assignment of Error, Underwood contends that he was denied his right to the effective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. Underwood meets neither prong.

{¶ 47} Underwood insists that trial counsel was ineffective for failing to object to two of the instances of prosecutorial misconduct argued in his Second Assignment of Error. But we have concluded in Part III, above, that those

instances do not amount to prosecutorial misconduct.

{¶ 48} Underwood also argues that trial counsel was ineffective for failing to object to Detective Saunders's statement that no potential witnesses were interviewed at The Men's Club because staff members are consistently uncooperative with police investigations. But because during the trial the defense attacked the thoroughness of the investigation, this testimony was relevant. In cross-examining the deputies, Underwood's attorney repeatedly stressed the fact that none of the deputies sought out possible witnesses at The Men's Club. The defense also pointed out during closing argument that the deputies should have tried to seek out witnesses at the club, regardless of the anticipated lack of cooperation. Since the defense attacked the thoroughness of the investigation, it was appropriate for the State to ask the deputies to explain why they did not make any attempts to question anyone at the club.

{¶ 49} Underwood's Fifth Assignment of Error is overruled.

VII

{¶ 50} All five of Underwood's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Daniel R. Allnutt
Hon. Connie S. Price