[Cite as *State v. Harrison*, 2022-Ohio-407.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28652 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2408 |
| | : | |
| DEACAPONE HARRISON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of February, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DEACAPONE HARRISON, Inmate No. A768-437, Southeastern Correctional Institution, 5900 B.I.S. Road, Lancaster, Ohio 43130
        Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant De'Acapone[1] Harrison appeals from his conviction for felonious assault, improper handling of a firearm in a motor vehicle, and having weapons while under disability.   For the reasons that follow, we affirm.

## I.   Facts and Procedural History

{¶ 2} This case arises from a shooting which occurred on July 20, 2019 at the Pick & Roll drive-thru located on South Broadway in Dayton; Brydale Buchanan suffered a gunshot wound to his left hand.   Following an investigation, Harrison was identified as the assailant.   On August 16, 2019, Harrison was indicted on one count of felonious assault (serious physical harm) in violation of R.C. 2903.11(A)(1), one count of felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2), one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2).   Both of the felonious assault counts included firearm specifications.

{¶ 3} Trial commenced on December 2, 2019.[2]   The State presented the testimony of Carl Woolens, who was employed by the Pick & Roll, a carryout and convenience store.   Woolens testified he was at work on July 20, 2019, and was serving customers at the drive-thru window, when a red car pulled up to the window at

---

[1] Because App.R. 11(A) requires that an appeal be docketed "under the title given to the action in the trial court," our caption uses a different spelling for the defendant-appellant's first name, but it appears from the pro se filings that the correct spelling is De'Acapone.

[2] Harrison elected to present the charge of having weapons under disability to the jury rather than trying the charge to the bench, after being properly advised by the court that doing so would allow the jury to hear evidence regarding his prior juvenile adjudication. Harrison indicated that he was aware of the consequences of presenting the charge to the jury.

approximately 9:00 p.m. The driver, later identified as Harrison, placed an order and tendered payment but, according to Woolens, the driver was one dollar short of the amount owed. Woolens testified that the driver began to argue with him and eventually claimed that Woolens actually owed him a dollar. Woolens testified that the manager, Brydale Buchanan, overheard the argument, walked over to the window, and told the driver to leave the premises. Once the initial dispute ended, the driver pulled forward, but he did not leave the premises. Woolens began to serve the next customer, but then heard that customer exclaim something to the effect that the driver in the red car was "about to shoot." Woolens testified that he observed Buchanan grab a gun, which Woolens had brought to work, and walk to the front of the carryout. At this point, Woolens ducked down and heard gunshots. He did not observe the shooting. Woolens testified that his gun was a .45 caliber weapon.

{¶ 4} On cross-examination, defense counsel asked Woolens to explain how his gun worked. During this questioning, Woolens indicated that Buchanan had mishandled the gun, which had caused the bullet to "ricochet." Tr. p. 321. When asked how he knew Buchanan had done so, Woolens stated that Buchanan had so informed him.

{¶ 5} Buchanan testified that he was employed at the Pick & Roll, which was owned by his parents. Buchanan testified that he was working on July 20, 2019, when he overheard Woolens arguing with a customer. Buchanan approached the drive-thru window and offered to count the cash drawer to see whether the customer owed more money. Buchanan testified that the customer left the window, and Buchanan then returned to another area of the store where he had been tending the lottery machines. According to Buchanan, he heard someone mention a gun. Buchanan testified that he

looked at the surveillance camera monitor and observed the customer in the red car brandishing a gun. Buchanan testified that he picked up Woolen's gun and went to the carryout's front door; he then opened the door to observe the red car. The car appeared to be driving away, so Buchanan turned to re-enter the store. Buchanan testified that, as he did so, he was shot in the left hand, and the door's glass fell to the ground. Buchanan indicated that, in response, he turned and fired one shot at the red car. He tried to fire a second shot, but the gun jammed. Buchanan testified that he called his mother, then he wrapped his hand in a cloth and began to sweep up the glass so that customers could continue to enter the store.

{¶ 6} Dayton Police Officer John Rice testified that he responded to the store following a 9:25 p.m. dispatch regarding a shooting. He met with Buchanan, who he described as frantic. Rice testified that a 9 mm casing was found in the roadway at the front of the business and a .45 caliber casing was found in the trash can on top of the glass swept up by Buchanan. Rice also testified that the incident was recorded on the store's video surveillance system.

{¶ 7} Dayton Police Officer Shaun Olinger, who worked in the Forensic Services Division, testified that he also reported to the scene. Olinger collected two shell casings which he identified as being a .45 caliber and a 9 mm caliber. He also testified that the bullet fragment removed from Buchanan's hand was collected. According to Olinger, that fragment was smaller than a bullet for a .45 caliber gun, but he was unable to state the exact caliber.

{¶ 8} Dayton Police Sergeant Joseph Heyob testified that he was on patrol on the date of the shooting. He testified that he was at a bank located near Stewart Street at

approximately 8:52 p.m. when he observed the driver of a red Nissan vehicle standing outside of his car while accessing the bank's ATM. Heyob testified that the windows of the vehicle were rolled down. Heyob testified that, in his experience, people who used an ATM in this manner were trying to avoid the surveillance cameras. Heyob testified that he ran the license plate, which he discovered was registered in Harrison's name. He also testified that the Bureau of Motor Vehicles picture associated with Harrison matched the person driving the vehicle. Heyob did not have any interaction with Harrison.

{¶ 9} Heyob testified that, approximately 30 minutes later, he heard the dispatch regarding the drive-thru shooting, which contained a description of a suspect and the suspect's vehicle. Heyob testified that the description matched the car and driver he had observed at the ATM, so he radioed the officers on the scene to determine whether they had a picture of the suspect vehicle. Heyob testified that he received a picture on his cruiser computer and determined that it matched the car he had seen at the bank. He then provided the license plate number and the name of the registered driver to the officers on the scene. Heyob testified that the bank where he observed Harrison was approximately a five-minute drive from the Pick & Roll.

{¶ 10} The record demonstrates that two separate photographic arrays were properly prepared and presented by Dayton Police. One was shown to Buchanan, who was unable to identify the shooter. The other was shown to Woolens, who identified Harrison as the customer in the red Nissan.

{¶ 11} The State introduced video recordings obtained from the Pick & Roll camera surveillance system. State's Exhibit 1 was a video recording from a camera situated at

the drive-thru line facing the front of the business. That video showed a red vehicle pull up to the service window and the driver speak to the person inside the service window. The car then pulled up about a car length, stopped for a few seconds, and then drove forward so that it was slightly in front of the building. The video showed an arm extend out of the driver's window, and a gun was visible in the driver's hand. The arm then retracted, and the car moved toward the street, where it stopped again. The car was slightly angled at that point so that the driver's door was not visible on the camera. The car then pulled into the street and drove away.

{¶ 12} Exhibit 1 also contained video footage taken from an exterior camera located at the front of the store. This camera faced the driver's side of the red vehicle, which could be seen as it pulled from the drive-thru line to the front of the building. Again, this video depicted the car come to a stop, and then the driver's arm extend from the car with a gun in hand, the arm retract, and the car pull further toward the road. At this point, the driver's upper body emerged through the car's window. The driver then returned to his seat and began to drive away. Buchanan then emerged into the parking lot and fired a shot toward the car.

{¶ 13} State's Exhibit 2 consisted of video footage from a camera located in the store's interior. The monitor showed four different views of the business at the same time. At the point the red vehicle made its second stop closer to the street, Buchanan could be seen on this video approaching the front door and opening it slightly. As the car could be observed pulling out of the parking lot, Buchanan turned away from the door. As the car began to drive away, a motion at the top of the driver's window/roof line was slightly visible; at the same time, Buchanan, whose back was toward the door, jumped

and looked down at his left hand. Buchanan then ran out the front door. As he opened the door, the door's glass fell to the ground. Buchanan then shot at the car.

{¶ 14} At trial, Harrison was found guilty on all charges and the firearm specifications. He filed a pro se motion for new trial and a motion to remove his attorney. Both motions were overruled at a hearing conducted just prior to the sentencing hearing. After merger of the felonious assaults and firearm specifications, Harrison was sentenced to an aggregate term of eight to ten years in prison.

{¶ 15} Harrison's trial counsel filed a notice of appeal, and appellate counsel was appointed. Harrison asked this court to remove counsel and appoint new counsel. We appointed new counsel, but this attorney later filed a motion to withdraw due to a breakdown in the attorney-client relationship. This court, once again, appointed new counsel, who also later filed a motion to withdraw. We granted the motion and entered an order permitting Harrison to retain new counsel. A fourth attorney entered an appearance as counsel of record but also filed a motion to withdraw. Thereafter, we entered an order permitting Harrison to proceed pro se.

{¶ 16} Before addressing Harrison's assignments of error, we must note that he has attached 35 exhibits to his appellate brief, the majority of which are not a part of the appellate record. "[A]ttachments to appellate briefs that are not * * * part of the record cannot be considered on appeal, as '[a] reviewing court cannot add matter to the record before it, which was not * * * part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *State v. Shouse*, 2d Dist. Montgomery No. 26172, 2015-Ohio-3918, ¶ 42, quoting *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Thus, the only attachments we may consider are

a photographic array introduced during trial and ten pleadings and court orders.[3]

## II.      Ineffective Assistance of Counsel

{¶ 17} Harrison's first assignment of error states:

DE'ACAPONE HARRISON'S DEFENSE COUNSEL CARL GORALESKI

WAS CONSTITUTIONALLY INEFFECTIVE.

{¶ 18} Harrison asserts that his attorney provided ineffective assistance during trial.

{¶ 19} In order to succeed on an ineffective assistance claim, a defendant must establish that his trial counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697. To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *Bradley* at 142. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. In evaluating counsel's performance, a reviewing court

---

[3] Those exhibits are labeled by Harrison as Exhibits 12, A-0, A-01, A-000, A-001, A-1, A-2, A-3, A-4, A-5 and A-6.

"must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. "[A] debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 37 (2d Dist.), citing *Strickland* at 689.

{¶ 20} Harrison first argues that his counsel was ineffective because he failed to obtain and utilize medical records about Buchanan's treatment following the shooting. Specifically, Harrison refers to an EMT report stating that Buchanan's hand had an entrance wound "that appeared to be a large caliber." He also refers to a nursing admission note which states, "per patient he was shot while at work with a large caliber 45." Harrison contends that presenting this evidence to the jury would have bolstered the defense theory that Buchanan shot himself when he mishandled Woolens's gun.

{¶ 21} Buchanan's medical records are not part of the trial record before us. Moreover, the records, which are attached to Harrison's appellate brief, are not properly authenticated. Thus, we may not consider them. Further, it is evident from Harrison's own brief that trial counsel was in possession of these records. Indeed, the record demonstrates that defense counsel's trial strategy, which centered upon the theory that Buchanan had accidentally shot himself, was based upon counsel's review of those records.

{¶ 22} As noted by the State, counsel's failure to subpoena the EMT and hospital nurse to testify could have been based upon a reasonable trial strategy. Specifically, it is possible counsel spoke to the medical witnesses and decided their testimony would not be helpful to the defense. Regardless, we cannot second guess counsel's trial strategy

based upon this record.

{¶ 23} Harrison also contends that counsel should have used Woolens's testimony to impeach Buchanan. We note that defense counsel did ask Buchanan whether he had informed Woolens that the gun had jammed. Buchanan denied doing so and stated that he told the police the gun had jammed. After that, counsel did not pursue that line of questioning. However, during closing argument, counsel competently argued that Woolens's testimony created reasonable doubt regarding the mechanism of Buchanan's injury. We cannot say that counsel's actions in this regard were deficient.

{¶ 24} Finally, Harrison asserts that counsel failed to provide him with copies of all items disclosed during discovery. It is well established that "[a] claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 28. Whether counsel provided discovery documents to Harrison is a matter that cannot be determined by the record and is therefore not an issue we can review on direct appeal.

{¶ 25} The first assignment of error is overruled.

### III. Motion For a New Trial

{¶ 26} The second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED, WITHOUT A HEARING, DE'ACAPONE HARRISON'S MOTION FOR A NEW TRIAL SURROUNDING MEDICAL RECORDS AND DEFENDANT NEW WITNESS.[4]

---

[4] We have set forth, verbatim, the assignments of error asserted by Harrison.

**{¶ 27}** Harrison asserts that the trial court abused its discretion by denying his motion for a new trial without conducting a hearing.   In support, he claims that his motion established the existence of newly discovered evidence which likely would have changed the verdict.   Specifically, Harrison claims the above-cited medical records constituted newly-discovered evidence.   He also attached an affidavit to his motion which purported to have been executed by a witness who was present at the time Buchanan was injured.

**{¶ 28}** Motions for a new trial are governed by Crim.R. 33, which provides that a new trial may be granted if any of several grounds exist that materially affected the defendant's substantial rights.   The grounds include: (1) irregularity in the proceedings, (2) misconduct of the jury, prosecuting attorney, or the witnesses for the state, (3) accident or surprise which ordinary prudence could not have guarded against, (4) the verdict is not sustained by sufficient evidence or is contrary to law, (5) error of law occurring at trial, and (6) newly discovered evidence.   Crim.R. 33(A).   "[N]ewly discovered evidence is, by definition, that 'which the defendant could not with reasonable diligence have discovered and produced at trial.' "   *State v. Walter*, 8th Dist. Cuyahoga Nos. 109395, 109399, 2020-Ohio-6741, ¶ 6, *appeal not allowed*, 163 Ohio St.3d 1504, 2021-Ohio-2401, 170 N.E.3d 900, ¶ 6, quoting *State v. Campbell*, 1st Dist. Hamilton No. C-950746, 1997 WL 5182, *3 (Jan. 8, 1997).   "The decision whether to grant a motion for a new trial lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."   *State v. Devaughns*, 2d Dist. Montgomery No. 23720, 2011-Ohio-125, ¶ 16, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990).   An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary or unconscionable.   *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248

(1985).

{¶ 29} We turn first to the medical records which Harrison claims would have demonstrated that Buchanan's trial testimony was untruthful, because they would have allegedly demonstrated that he was shot by a .45 caliber weapon. Harrison claims he did not personally know of or have access to these records until after the trial. However, it is clear from Harrison's own brief that his trial counsel obtained these records prior to trial and that the records provided the basis for the defense theory that Buchanan's wound was self-inflicted. Thus, regardless of Harrison's claimed ignorance of the existence of these records, the argument that they constitute new evidence lacks merit.

{¶ 30} We next address Harrison's claim that he is entitled to a new trial based upon an affidavit provided by a "new" witness. Specifically, Harrison attached an affidavit to his motion which purports to be executed by Terroin Griffin. In the affidavit, Griffin avers that he and Harrison were in Harrison's car from 6:30 p.m. until 1:19 a.m. on the date of the shooting and that he (Griffin) he did not observe Harrison with a gun and did not observe him shooting a gun while at the drive-thru. Harrison contends this evidence would have changed the verdict had counsel presented it to the jury.

{¶ 31} The trial court found that the affidavit appeared suspicious and, further, did not establish a defense. We agree. The body of the affidavit identified the affiant as Terroin Griffin, but it was signed by Terrom Mcghee. Also, the notary verification section identified the witness as Terroin Mcghee.[5] More importantly, Harrison obviously would

---

[5] In his reply brief, Harrison contends that he corrected any deficiency by providing the witness's birth certificate. However, we cannot find such a birth certificate in the record, and we cannot conclude that a birth certificate would necessarily have resolved the problematic use of varying names.

have been aware of the fact that this witness was with him during the shooting before the trial commenced. Thus, there is no basis for claiming any information provided by this witness could not have been ascertained prior to trial. Moreover, the affidavit did not affirmatively proclaim Harrison's innocence, but merely noted that the witness did not observe the gun or the shooting.

{¶ 32} From our review of the record, Harrison has failed to demonstrate that either the medical records or the testimony of the witness constituted newly-discovered evidence. Therefore, the trial court did not abuse its discretion in denying the motion without a hearing.

{¶ 33} The second assignment of error is overruled.

## IV.    Prosecutorial Misconduct

{¶ 34} The third assignment of error states:

KIMBERLY MELNICK AND ASHLEY ATKINSON ACTIONS AMOUNTED TO PROSECUTORIAL MISCONDUCT BY WITHHOLDING EXCULPATORY EVIDENCE BY SUPPRESSING AND CONCEALING EVIDENTIAL MEDICAL RECORDS, FIRE OPERABILITY REPORT/NIBIN, MICROSCOPIC COMPARISON BALLISTIC REPORTS, PROSECUTOR MISREPRESENTATIONS ABOUT THE EXISTENCE EVIDENCE UNTESTED BY THE MIAMI VALLEY CRIME LAB WHICH INCLUDE THE EXHIBIT #9, #14, #12, #14, #18, PROSECUTOR KIMBERLY MELNICK ASHLEY ATKINSON MAKING IMPROPER STATEMENT IN FRONT OF THE JURY AND TESTIFYING TO THE FACT THAT EXHIBIT #18 WAS A

9MM FRAGMENT FIRE FROM AN ALLEGED AUTOMATIC 9-MILLIMETER PISTOL.

{¶ 35} Harrison asserts that the prosecutors acted improperly by (1) withholding and suppressing exculpatory evidence, (2) permitting their witness to "purge" himself during testimony, and (3) making improper statements during closing argument.[6]

{¶ 36} We begin with Harrison's assertion that the prosecutors withheld potentially exculpatory evidence. As stated above, the record affirmatively demonstrates that the medical records in the State's possession were provided to defense counsel. Harrison also claims that the State failed to disclose results from testing performed on the .45 caliber gun, the two casings, and the bullet removed from Buchanan's hand. However, there is no evidence in this record that would support Harrison's assertion that these items were subjected to testing and, if so, that such evidence was exculpatory. Thus, we can find no merit in this claim of prosecutorial misconduct.

{¶ 37} We next address the claim that the prosecutors presented Buchanan's testimony despite knowing that the medical records contradicted him. Again, the medical records are not properly before us and, as such, we have no mechanism for reviewing Harrison's claim that Buchanan committed perjury. Thus, there is no way to discern the accuracy of this assertion.

{¶ 38} Finally, we address Harrison's claim that the prosecutors made improper arguments during closing. Harrison fails to cite to any specific part of the record in support of this argument. Instead, his argument appears to be a broad statement that

---

[6] We assume Harrison intended to state that Buchanan committed perjury rather than that Buchanan "purged" himself.

the prosecutors acted improperly in arguing their theory of the case despite knowing the medical records demonstrated that Buchanan had shot himself.

**{¶ 39}** "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected any substantial right of the accused." *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61, quoting *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000). "However, the touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.,* citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). This court has recognized that prosecutors are given wide latitude in their closing statements to draw inferences from the testimony heard and the evidence presented. *State v. Lillicrap*, 2d Dist. Montgomery No. 23958, 2011-Ohio-3505, ¶ 6. "In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial, and if it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed." (Citation omitted.) *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21.

**{¶ 40}** Defense counsel did not raise an objection to any of the argument offered by the prosecutor. Thus, we are limited to a review for plain error. This court has previously stressed that we "recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' In order to prevail on a claim governed by the plain error standard, [the defendant] must demonstrate that the outcome of [his] trial would clearly have been different but for the errors that [he] alleges." (Citations omitted.) *State v. Carpenter*, 116 Ohio App.3d 615,

621, 688 N.E.2d 1090 (2d Dist.1996).

{¶ 41} We have reviewed the entire trial transcript, including the State's argument, and cannot find any passages to support Harrison's claims.   Thus, we find no error, let alone plain error.   Accordingly, the third assignment of error is overruled.


## V.    Judicial Bias

{¶ 42} Harrison's fourth assignment of error states:

JUDGE HUFFMAN WAS BIAS WHEN SHE STATED THAT SHE CAN SEE ON THE VIDEO THAT DEFENDANT FIRED A SHOT, WHEN A JURY OF 12 QUESTIONS THE NO MUZZLE FLASH BEING DECIPHERABLE ID. AT 608-609 AND REQUESTED A MAGNIFYING TO REVIEW THE EVIDENCE OF THE FIREARM BEING FIRED TP. 659 LN. 19-24 VOL. 3 TR. 603-604.

{¶ 43} Harrison asserts that the trial court judge erred by failing to recuse herself from the case.   In support, he first claims he demonstrated the judge's lack of impartiality in a motion for disqualification filed on September 5, 2019.   He also claims that the judge exhibited bias "when she stated that she can see on the video that Defendant fired a shot is hearsay under Evid.R. 801."

{¶ 44} "Judicial bias has been described as 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'"   *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 48, quoting *State ex rel. Pratt v.*

*Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." (Citation omitted.) *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.

{¶ 45} We have reviewed Harrison's motion for disqualification filed at the onset of this case. The motion claimed the trial judge had personally "handpicked" his case and placed it on her own docket because she had a "personal political interest" in the case. The motion further claimed that the trial judge had a conflict of interest because she had a "personal vendetta" against Harrison's father, which caused her to revoke the father's bond in a 2006 criminal case.

{¶ 46} The trial court overruled the motion to disqualify, noting that the case management department for the common pleas court had a system for randomly assigning cases to the judges and that the judges had no means of handpicking any case. The court also stated that it had no animosity toward Harrison or any member of his family. There simply is nothing in this record to contradict these statements.

{¶ 47} We note that Harrison, during a hearing conducted on September 27, 2019, claimed to have evidence that the trial judge had handpicked his case. However, he stated that he did not have the evidence in hand and he refused, when asked, to divulge the nature of the evidence. We also note that he has not, during the pendency of this case, presented any competent evidence to support his claim.

{¶ 48} We conclude that the original motion was properly overruled. The mere fact that a trial judge revoked a bond in a 2006 criminal case that was pending against Harrison's father, without more, was not sufficient to require recusal. Further, Harrison's

claim that the trial judge personally picked his case for her docket was without merit. More importantly, our review of the record does not demonstrate any actions or rulings by the trial judge that would lead us to find she was biased against Harrison. Thus, we find no error in the decision overruling the motion for disqualification.

{¶ 49} Next, Harrison claims the trial judge exhibited bias by stating she had observed the shooting on the video presented at trial. In our review of the record, the only portion of the record relating to this claim is found during a hearing conducted just prior to sentencing on Harrison's pro se motion for new trial and his motion to terminate defense counsel's representation. At that time, Harrison had not filed a new motion for disqualification or recusal. Thus, no matters regarding recusal were pending. Further, from our reading of that exchange, the trial court was merely discussing defense counsel's performance during trial and stated that counsel had performed well in light of the fact that the State had presented video evidence of the shooting. The judge did not state that she could observe the shooting on the video.

{¶ 50} We conclude that Harrison has failed to present any competent, credible evidence supporting his claim of judicial bias. Thus, we find no error in the court's decision to overrule his September 2019 motion for disqualification. We further find no support for his claim that the trial court exhibited bias in making a statement regarding the video of the incident.

{¶ 51} The fourth assignment of error is overruled.

## VI. Abuse of Discretion

{¶ 52} The fifth assignment of error states:

COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ISSUE ITS FINAL ORDER ON THE DEFENDANT HARRISON MOTION FOR NEW TRIAL VIOLATING DEFENDANT HARRISON FIFTH AND FOURTEEN AMENDMENT PROCEDURAL AND SUBSTANTIVE RIGHTS UNDER RULE 58(B).

**{¶ 53}** Harrison contends that the trial court erred by failing to issue a final order concerning its denial of his motion for a new trial and by failing "to notify Defendant Harrison of his rights to the final appeal order of the new trial overruling."

**{¶ 54}** The record demonstrates that the trial court did issue a decision and entry denying Harrison's motion for a new trial. Although the decision did not set forth the court's findings of fact and conclusions of law, it did state, "Defendant failed to present sufficient grounds for a hearing on the Motion and for the reasons stated on the record prior to sentencing, Defendant's Motion for New Trial is hereby OVERRULED." A review of the transcript of the hearing conducted just prior to sentencing shows that the trial court did set forth its reasons for overruling the motion at the hearing. The record further demonstrates that the decision was properly served on the parties.

**{¶ 55}** Crim.R. 33 does not require a trial court to issue findings of fact and conclusions of law when denying a motion for a new trial. *State v. Elliott*, 1st Dist. Hamilton No. C-020736, 2003-Ohio-4962, ¶ 11; *State ex. rel. Collins v. Pokorny*, 86 Ohio St.3d 70, 711 N.E.2d 683 (1999). Further, Harrison did not file a motion asking for findings of fact or conclusions of law.

**{¶ 56}** We find no merit in this argument. Accordingly, the fifth assignment of error is overruled.

## VII.    Conclusion

{¶ 57} All of Harrison's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Deacapone Harrison
Hon. Mary Katherine Huffman